KENNILWORTH PARTNERS L.P., Soundshore Partners L.P., and Soundshore Holdings Ltd., Plaintiffs,

v.

CENDANT CORPORATION, HFS, Inc., Ernst & Young, LLP., Walter A. Forbes, Henry R. Silverman, Michael P. Monaco, Scott E. Forbes, Stephen P. Holmes, Robert D. Kunish, Christopher K. Mcleod, E. Kirk Shelton, Robert T. Tucker, James E. Buckman, John D. Snodgrass, Bartlett Burnap, Leonard S. Coleman, T. Barnes Donnelley, Martin L. Edelman, Frederick D. Green, Stephen A. Greyser, Dr. Carole G. Hankin, Brian Mulroney, Robert E. Nederlander, Burton C. Perfit, Anthony G. Petrello, Robert W. Pittman, E. John Rosenwald, Jr., Robert J. Rittereiser, Stanley M. Rumbough, Jr., Leonard Schutzman, Robert F. Smith, Roger J. Stone, Jr., and Craig R. Stapleton, Defendants.

No. CIV. A. 99–759.

United States District Court,
D. New Jersey.

Aug. 10, 1999.

420

Joel M. Leifer, Joel M. Leifer & Associates, New York City, NY, for Plaintiffs Kennilworth Partners, et al.

Steven S. Radin, Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, Newark, NJ, Greg A. Danilow, Timothy E. Hoeffner, Laura Proctor, Weil, Gotshal & Manges LLP, New York City, NY, Dennis J. Block, Howard Hawkins, Cadwalader, Wickersham & Taft, New York City, NY, for Defendant CUC Directors.

Michael Rosenbaum, Carl Greenberg, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade P.C., Short Hills, NJ, Samuel Kadet, Skadden, Arps, Slate, Meagher & Flom, New York City, NY, for defendant Cendant Corporation.

Herbert J. Stern, Stephen M. Greenberg, Joel M. Silverstein, Stern & Greenberg, Roseland, NJ, James G. Kreissman, Jacob S. Pultman, Lauren J. Rosenblum, Simpson, Thatcher & Bartlett, New York City, NY, for Defendant HFS Directors.

Douglas S. Eakeley, Theodore V. Wells, Jr., Peter L. Skolnik, Lowenstein Sandler P.C., Roseland, NJ, Alan N. Salpeter, Caryn L. Jacobs, Bennet W. Lasko, Mayer, Brown & Platt, Chicago, IL, Kathryn A. Oberly, Robert G. Cohen, William P. Hammer, Jr., Ernst & Young L.L.P., New York City, for Defendant Ernst & Young.

WALLS, District Judge.

Kennilworth Partners, L.P., Soundshore Partners, L.P. and Soundshore Holdings LTD. (collectively "the plaintiffs"), have sued the following defendants, claiming violations of numerous securities laws. Defendant Cendant Corporation ("Cendant") has moved to dismiss Counts I and II of the plaintiffs' amended complaint. The defendant CUC Directors have moved to dismiss Counts I, III, IV and V. Defendant Ernst & Young L.L.P. has moved to dismiss Counts I and III. The defendant HFS Directors have moved to dismiss Counts I, III, IV and V. Their motions are granted.

## Factual Background

Plaintiffs Kennilworth Partners L.P. ("Kennilworth"), Soundshore Partners L.P. ("Soundshore Partners") and Soundshore Holdings LTD. ("Soundshore Holdings") are companies in the business of investment in securities and other financial instruments. Defendant Cendant is a diversified corporation formed from the merger of defendants CUC Corporation ("CUC") and HFS, Inc. ("HFS"). Defendant Ernst & Young ("E & Y") is a public accounting firm which, as the independent auditor for CUC, performed audits of CUC's 1995, 1996 and 1997 financial statements.

## The HFS Notes

In February 1996, HFS registered and issued $210 million in 4 3/4% Convertible Senior Notes due 2003 (the "HFS notes") by filing a Registration Statement on Form S–3 (the "Registration Statement") with the Securities and Exchange Commis-

sion (the "SEC"). The holders of these notes received the right to convert them into shares of HFS common stock at a predetermined price. Plaintiffs Kennilworth, Soundshore Partners and Soundshore Holdings purchased a number of the HFS Notes. On December 17, 1997, defendant CUC merged with defendant HFS. The resulting entity was named Cendant Corporation.

Following the merger, holders of HFS notes had the option to convert them into Cendant common stock at $27.76 per share (the "conversion price"). Cendant had the right to redeem the HFS notes for cash at 103.393% of their face value. This right was triggered only if Cendant's common stock price had exceeded $38.86 per share for twenty days within a period of thirty consecutive trading days before the notice of redemption. In such case, the holders of HFS notes had the option of accepting the cash payment or converting the HFS notes into Cendant stock. On April 3, 1998, with its stock trading at approximately $40 per share, Cendant announced its intention to redeem the HFS notes. On April 6, 1998, Kennilworth converted $6 million principal amount of HFS notes into 216,000 shares of Cendant common stock at the conversion rate of $27.76 [1] Kennilworth also redeemed for cash approximately $2.9 million of HFS notes purchased on the open market. On April 13, 1996 Soundshore Partners and Soundshore Holdings converted $3 million principal amount of HFS notes into 108,000 shares of Cendant stock at the conversion price of $27.76.[2]

### The CUC Notes

In February, 1997, CUC issued 3% convertible notes due 2002 (the "CUC Notes"). Between March 18, 1998 and March 20, 1998, Kennilworth purchased CUC Notes in the open market for approximately $25 million.

*Accounting Irregularities*

On April 15, 1998, Cendant announced that it had discovered accounting irregularities in the membership clubs operations unit which had been part of the CUC business. Cendant also announced that it would restate annual and quarterly net income and earnings per share for 1997 and might restate certain other periods. On the following day, Cendant's stock price fell 46 percent. Kennilworth then sold the CUC notes at a loss of approximately $9.7 million. Eventually, Cendant restated earnings for the calendar years ended December 31, 1995, 1996 and 1997 (as well as all quarters in 1996 and 1997) and the first two quarters of 1998. On September 29, 1998, Cendant publicly announced that it had lost $217.2 million in 1997 instead of earning $55.5 million as it had reported earlier.

On January 25, 1999, the plaintiffs filed an amended complaint in the United States District Court for the Southern District of New York. That complaint, which was transferred to this Court on February 4, 1999, alleges violations by Cendant, HFS, certain HFS Directors, certain CUC Directors and E & Y of Section 11, 15 U.S.C. § 77k, of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (the "Securities Act") (Count I), violations by Cendant and HFS of Section 12, 15 U.S.C. § 77*l*, of the Securities Act (Count II), violations by all defendants of Section 10(b), 15 U.S.C. § 78j(b), of the Securities and Exchange Act of 1934, 15 U.S.C. § 78, *et seq.* (the "Exchange Act") and Rule 10b–5, 17 C.F.R. § 240.10b–5 (Count III), violations by the HFS and CUC Directors (collectively "the individual defendants") of Section 15, 15 U.S.C. § 77*o*, of the Securities Act (Count IV), violations by the individual defendants of Section 20(a), 15 U.S.C. § 78t(a), of the Exchange Act, and breach of contract against HFS and Cendant (Count VI). Defendants Cendant, E & Y,

---

**1.** At this time, Cendant stock was trading on the open market for $41.375 per share.

**2.** At this time, Cendant stock was trading at $36.50 per share.

HFS Directors and CUC Directors have filed motions to dismiss the plaintiffs' complaint.

### Legal Standard

On a Rule 12(b)(6) motion, the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir.1994). The question is whether the plaintiff can prove any set of facts consistent with his allegations that will entitle him to relief, not whether he will ultimately prevail. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Washington Legal Found. v. Massachusetts Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. *See* Fed. R.Civ.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### Analysis

1. *The Plaintiffs' Section 11 Claims*

■ The plaintiffs allege that the defendants violated Section 11 of the Securities Act. Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, provides for damages caused by a false or misleading registration statement. If the registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading," any person who

acquired that security may sue every person who signed the registration statement, every director or partner, every professional named as having prepared or certified the registration statement or any valuation used in connection with it, and every underwriter. *Id.*

Under 15 U.S.C. § 77k(e), damages are calculated as the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and:

(1) the value thereof as of the time such suit was brought, or

(2) the price at which such security shall have been disposed of in the market before suit, or

(3) the price at which such security shall have been disposed after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security and the value thereof as of the time such suit was brought.

However, if the defendant proves that all or any portion of such damages represents something other than the depreciation in value of the security resulting from the false or misleading registration statement, that portion of or all of such damages shall not be recoverable.

Defendants Cendant, E & Y, HFS Directors and CUC Directors have moved to dismiss the plaintiffs' § 11 claim, and contend that the plaintiff's § 11 claim fails as a matter of law because the transaction underlying the claim is an exempt transaction pursuant to section 3(a)(9), 15 U.S.C. § 77c(a)(9), of the Securities Act. Section 3(a)(9) states that "the provisions of this subchapter shall not apply to ... any security exchanged by the issuer with its existing security holders exclusively where no commission or other remuneration is paid or given directly or indirectly for soliciting the exchange." The Securities and Exchange Commission ("SEC") has promulgated Rule 149, 17 C.F.R. § 230.149, which defines "exchanged" used in § 3(a)(9):

The term "exchanged" in section 3(a)(9) ... shall be deemed to include the issuance of a security in consideration of the surrender, by the existing security holders of the issuer, of outstanding securities of the issuer, notwithstanding the fact that the surrender of the outstanding securities may be required by the terms of the plans of exchange to be accompanied by such payment in cash by the security holder as may be necessary to effect an equitable adjustment, in respect of dividends or interest paid or payable on the securities involved in the exchange, as between such security holder and other security holders of the same class accepting the offer of exchange.

The defendants argue that the plaintiffs submitted their HFS notes to Cendant, which became the "issuer" by succeeding to HFS's business, in exchange for shares of Cendant common stock. They further assert that the plaintiffs have not alleged that the exchange involved any "commission or other remuneration" to solicit the exchange. Therefore, they continue, the transaction of which the plaintiffs complain is exempt pursuant to § 3(a)(9).

The defendants maintain that the SEC has long recognized that the § 3(a)(9) exemption applies to shares issued by a company upon conversion by the holders of securities such as the HFS notes. *See, e.g., Saatchi & Saatchi Co. PLC*, SEC No–Action Letter, 1989 WL 246277 (May, 1989) (SEC granted no-action request under Section 3(a)(9) for shares issued on conversion of convertible preferred securities); *American General Corp.*, SEC No–Action Letter, 1980 WL 17807 (Sept. 19, 1980) (the conversion of acquired company's securities into common stock of acquiring company subject to § 3(a)(9) exemption); *Heritage Bancorporation*, SEC No-Action Letter, 1973 WL 10356 (June 4, 1973) (Heritage Bank, after acquisition of Iron Bank, was exempt under § 3(a)(9) from registration of its shares exchanged for convertible notes issued by Iron Bank).

The plaintiffs counter that the "entire transaction" is not exempt. They declare that "[i]t is far from proven that the merger of HFS and CUC into Cendant did not create a situation where Cendant's corporate structure, operations and financial condition differed materially from that of HFS." (Pt. Br. in Opp. Summ. J. at 23). "Given subsequent events, the merger and reorganization did in fact result in such a substantial difference between HFS and Cendant as would warrant the conclusion the [section] 3(a)(9) exemption is not available." *Id.* Plaintiffs appear to argue that the § 3(a)(9) exemption is available only when the issuer is the same for both the convertible security and the security into which it is converted. They state that Cendant and HFS are two different companies, and suggest that this "difference" means that the HFS notes and the Cendant common stock were not offered by the same issuer. While this assertion may be practically true, it is legally unavailing.

Under the terms of Supplemental Indenture No. 2, filed pursuant to the Cendant merger, and contemplated by Section 801 of the original Indenture, the merger constituted a "Change of Control;" Cendant was required to assume the obligations under the HFS notes. The conversion price of the HFS notes was adjusted, and Cendant replaced HFS as the "Company" which would issue shares of common stock upon any conversion. Because HFS ceased to have a separate existence, Cendant, for legal purposes, became the "issuer" of the HFS notes and the holders of the HFS notes became Cendant "security holders."

The issue remaining is whether there was any "commission or other remuneration" given to solicit the exchange of the HFS notes and Cendant stock. According to 17 C.F.R. § 230.150, "[t]he term 'commission or other remuneration' in section 3(a)(9) shall not include payments made by an issuer, directly or indirectly, to its security holders in connection with an exchange of securities for outstanding securi-

ties, when such payments are part of the terms of the offer or exchange." The plaintiffs do not allege that there were commissions or remuneration paid in connection with the exchange of the HFS notes for Cendant common stock.

The Court finds that the exchange of HFS Notes for Cendant stock pursuant to Supplemental Indenture No. 2 satisfies the conditions of the plain language of Section 3(a)(9). Because the exchange here was exempt from the registration requirements of the Act, the Court grants the defendants' motions to dismiss the plaintiffs' Section 11 claim with prejudice.[3]

### 2. The Plaintiff's Section 12 Claim

The plaintiffs also claim that defendants Cendant and HFS have violated Section 12 of the Securities Act, which provides that any person who "offers or sells" a security by means of a prospectus or oral communication containing a materially false statement or omission of material fact shall be liable to "any person" purchasing such security from him. 15 U.S.C. § 77*l*(a)(2). The purchaser of such security may recover: (1) the consideration paid for the security with interest, less the amount of any income received thereon, upon the tender of the security, or (2) damages if he no longer owns the security. *Id.* If the person who sold or offered the security can prove that all or part of the depreciation in value was caused by factors other than the false or misleading statement, he is not liable for that amount.[4] 15 U.S.C. § 77*l*(b).

■ The term "prospectus" does not include every written communication that offers a security for sale, but only refers to

a document that, absent an overriding exemption, must include the "information contained in the registration statement." *Gustafson v. Alloyd Company, Inc.*, 513 U.S. 561, 569, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). Because only public offerings by an issuer of a security, or by controlling shareholders of an issuer, require the preparation and filing of a registration statement, a prospectus is confined to documents related to such public offerings, *Id.* And several courts have agreed that the phrase "oral communication" in § 12(2) is restricted to oral communications which relate to a prospectus. *See, e.g., Gustafson*, 513 U.S. at 567–68, 115 S.Ct. 1061; *Pacific Dunlop Holdings, Inc. v. Allen & Co., Inc.* 993 F.2d 578, 588 (7th Cir.1993); *Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 688 (3d Cir.1991).

■ The defendants claim that § 12(2) does not apply to the exchange transaction because there is no allegation that the Registration Statement or Prospectus for the HFS notes contained a materially false statement or omission of a material fact. The plaintiffs counter that the Registration Statement incorporated by reference certain documents that did contain such statements or omissions.

The Supplemental Prospectus filed with the 1996 Form S–3 had the following language:

> All documents filed by the Company pursuant to Sections 13(a), 13(c), 14 and 15 of the Exchange Act subsequent to the date of the Prospectus and prior to the termination of the offering of the Securities shall be deemed to be incorporated herein by reference and to be part hereof from the date of the filing of such documents.

---

3. The plaintiffs also alleged that certain false and misleading documents were later incorporated by reference into the Registration Statement for the HFS Notes, thus making the Registration Statement itself false and misleading in violation of Section 11. The defendants deny this contention, stating that the Registration Statement was no longer effective when these later documents were filed or disseminated. Because the Court has

ruled that the exchange was exempt under Section 3(a)(9), this question is moot.

4. The § 3(a)(9) exemption is inapplicable to Section 12(2) claims because liability attaches "whether or not the security is exempted by the provisions of section 3, other than section 3(a)(2)." 15 U.S.C. § 77*l*(2).

On April 3, 1998, Cendant announced its intention to redeem the HFS Notes. The right to redemption was available to Cendant only if the price of its common stock on the New York Stock Exchange ("NYSE") had exceeded $38.86 for at least twenty days within the thirty days immediately before the date of any notice of redemption. On April 3, 1998, the market price of Cendant common stock was approximately $40. The plaintiffs assert that the market price reflected the very favorable, but erroneous, financial results contained in Cendant's 1997 Proxy Statement, 1997 Form 10K report[5], and the press releases accompanying the report. They argue that had the share price not been so inflated, Cendant's right to redemption would not have been triggered and they, the plaintiffs, would not have been faced with the requirement to redeem or convert. The plaintiffs argue that these 1997 Proxy Materials related to the merger and the 1997 Form 10-K filed with the SEC were incorporated by reference into the HFS Notes Prospectus. Because these materials contained materially false statements and omissions of material fact, the plaintiffs allege that the defendants are liable under § 12(2).

The defendants respond that only documents filed "prior to the termination of the offering of the securities" were incorporated by reference into the prospectus. They further argue that a public offering of securities "is complete when the securities 'come to rest in the hands of the investing public.'" Review of Antimanipulation Regulation of Securities Offerings, Exchange Act Release No. 33–7057, 1994 WL 138672, at *7 (April 19, 1994) (citation omitted); *compare R.A. Holman & Co. v. Securities and Exch. Comm'n*, 366 F.2d 446, 449 (2d Cir.1966) ("Distribution" comprises "the entire process by which in the course of a public offering the block of securities is dispersed and ultimately comes to rest in the hands of the public.") (citing *Lewisohn Copper Corp.*, 38 S.E.C. 226, 234, 1958 WL 2219 (1958)). In this case, the defendants contend that the offering of the HFS notes was completed on February 22, 1996, more than two years before Cendant's 1997 Form 10–K was filed with the SEC.

The plaintiff argues that when a convertible security is offered, "there is a continuing offer by the issuer of the underlying securities which terminates only upon the exercise or expiration of the right to convert." (Pt. Brief in Opp. Mot. to Dismiss at 18).[6] Under this argument, the "offering" would have remained open until April 1998 when the HFS notes were exchanged for Cendant common stock. According to the plaintiffs, the 1997 Cendant Form 10–K, as well as the proxy materials and press release related to the merger, were disseminated while the offering was still effective. Therefore, the incorporation by reference of the fraudulent Form 10–K into the 1996 Registration Statement and prospectus for the HFS notes gives rise to the plaintiffs' § 12(2) claim. The analysis is infirm.

The HFS notes were "offered" pursuant to the 1996 Form S–3 and accompanying prospectus. There is no allegation that either the Form S–3 or the prospectus contained false or misleading statements or omissions. An offering of such nature or magnitude that it requires restrictions upon purchases by participants in order to prevent manipulative practices has been characterized by the SEC as a "distribution." Exchange Act Release No. 33–7057,

---

5. A "10–K" report is a detailed document, similar to an annual report, which must be filed annually by all issuers of securities registered pursuant to Section 12 of the Exchange Act and by all registrants under the Securities Act which are subject to Section 15(d) of the Exchange Act. 17 C.F.R. § 240.13a–1; 17 C.F.R. § 240.15d–1.

6. The plaintiffs do not rely on case law for this proposition, but rather rely on L. Loss & J. SELIGMAN, *Securities Regulation*, at 4249–4250 (3d Ed.1989).

1994 WL 138672 at * 6. The term distribution refers to an offering of securities, whether or not subject to registration under the Securities Act, that is distinguished from ordinary trading transactions by the magnitude of the offering and the presence of special selling efforts and selling methods. *Id.* The Court finds that the offering of the HFS notes was such a distribution. A distribution commences at the point when the incentive to engage in, manipulative conduct is first present, and is complete when the securities "come to rest in the hands of the investing public." *Id.* at * 7. The offering of the notes was completed when the last notes were sold to the investing public, which, according to the defendants and undenied by the plaintiffs, occurred in February 1996. The redemption of the HFS notes was a right granted to Cendant by the terms of the notes. Because this right survived the termination of the offering of the notes does not mean that the offering remained open.

If the Court were to accept the plaintiff's reasoning, such could lead to an unreasonable result. Under the plaintiffs' argument, the offering of the HFS notes could have remained open until the 2003 maturity date. If Cendant had never exercised its right to redeem the HFS notes, the plaintiffs would have retained the right to convert the notes into common stock at all times until the 2003 maturity date. In that case, the 1996 Form S–3 and its accompanying prospectus would have incorporated by reference most, if not all, documents filed with the SEC by HFS or Cendant until the year 2003. This would have been an unreasonable and unnecessary result and not served any purpose of the Securities Act. The Court finds that the offering of the HFS Notes was completed on February 22, 1996 and that the Cendant 1997 Form 10–K was not incorporated by reference into the 1996 Form S–3 or its accompanying prospectus.

To support their claim under § 12(2), the plaintiffs have only alleged, by their incorporation by reference argument, that the 1996 Form S–3 or HFS Notes Prospectus contained materially false statements or omissions of material fact. To perfect this claim, they rely on allegedly false and misleading statements and omissions in the Cendant 1997 Form 10–K, and the Cendant Proxy Materials and press release related to the merger. The Court has found that these materials were not incorporated by reference into the 1996 Form S–3 or HFS Notes Prospectus. Hence, the Court finds that the plaintiffs have not sufficiently plead a violation of § 12(2). The defendants' motions to dismiss the plaintiffs § 12(2) claim are granted with prejudice.

### 3. *Section 10(b) and Rule 10b–5*

 Section 10(b) of the Exchange Act prohibits the use of fraudulent schemes or devices in connection with the purchase or sale of securities. Under § 10(b), it is unlawful to "employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention" of any rule promulgated by the SEC designed to protect the investing public. To implement the section, the SEC enacted Rule 10b–5, violation of which gives rise to a private cause of action. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). That Rule makes it unlawful: (1) "[t]o employ any device, scheme, or artifice to defraud," (2) "[t]o make any untrue statement of a material fact" or to omit to state a material fact so that the statements made "in light of the circumstances," are misleading, and (3) "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b–5. The Supreme Court has held that standing to bring a private cause of action under Rule 10b–5 is limited to actual purchasers or sellers of

securities. *Blue Chip Stamps,* 421 U.S. 723, 95 S.Ct. 1917.

■ This tort, although statutory in origin, sounds in the common law of fraud and deceit and retains, in modified form, the common law elements of duty, breach, causation, and damage. *See Huddleston v. Herman & MacLean,* 640 F.2d 534, 547 (5th Cir.1981) (10b–5 claim derived from common law action for deceit), *modified on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). The plaintiff must prove knowledge by the defendant, an intent to defraud, misrepresentation or failure to disclose, materiality of the information and injurious reliance by the plaintiff. *Thomas v. Duralite Co.,* 524 F.2d 577 (3d Cir.1975); *Rochez Bros., Inc. v. Rhoades,* 491 F.2d 402 (3d Cir.), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976). More precisely, these elements form the following test: to cast a 10b–5 claim, a plaintiff must allege that the defendant made (1) a misstatement or an omission (2) of a material fact (3) with scienter (knowledge) (4) in connection with the purchase or sale of a security (5) upon which plaintiff reasonably relied, and (6) that reliance proximately caused injury to the plaintiff. *Kline v. First Western Government Securities, Inc.,* 24 F.3d 480, 487 (3d Cir.), *cert. denied sub nom., Arvey, Hodes, Costello & Burman v. Kline,* 513 U.S. 1032, 115 S.Ct. 613, 130 L.Ed.2d 522 (1994); *In re Phillips Petroleum Secs. Litig.,* 881 F.2d 1236, 1244 (3d Cir.1989) (citing *Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 942–43 (3d Cir.), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985)).

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") strengthened the requirement that:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind the complaint shall with respect to each act or omission alleged to violate this chapter, state with partic-

ularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

In addition, a complaint alleging fraud must satisfy the requirements of Fed. R.Civ.P. 9(b), which instructs that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b).

■ The required state of mind to bring a fraud claim under § 10(b) or Rule 10b–5 is scienter, "a mental state embracing an intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). To adequately plead scienter, the plaintiff must either "(1) identify circumstances indicating conscious or reckless behavior by defendants or (2) allege facts showing both a motive and a clear opportunity for committing the fraud." *In re Burlington Coat Factory Securities Litig.,* 114 F.3d 1410, 1422 (3d Cir.1997).

As said, § 10(b) of the Exchange Act prohibits the use of fraudulent schemes or devices in connection with the purchase or sale of securities. When a security is issued, which is convertible into another security, "the issue or transfer of such other security upon the exercise of such right of conversion or subscription [is] deemed a sale of such other security." 15 U.S.C. § 77b. The plaintiffs' complaint alleges that "[d]efendants had actual knowledge of the misrepresentations and omissions of material fact ... or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them." (Compl., Count III). Specifically, the plaintiffs assert that the proxy materials and press release which accompanied the merger, as well as the Cendant 1997 Form 10–K, contained untrue statements of material fact and material omissions. (Compl., ¶¶ 22–23). The plaintiffs assert

that at the time of the redemption notice, as well as at the time of the actual exchange, Cendant's stock price was artificially inflated because of these untrue statements and omissions. Because Cendant's right to redeem or cash out the HFS notes was only triggered if its stock price exceeded $38.86 for twenty of the thirty days before the redemption notice, the plaintiffs claim that the exchange was the result of fraud and violative of § 10(b) and Rule 10b–5.

To show knowledge by the defendants, the plaintiffs assert that "as of the filing of [these materials], defendants knew, or recklessly disregarded, the fact that Cendant's financial statements were materially false and misleading and were presented in a manner that violated the principles of fair financial reporting and Generally Accepted Accounting Principles ("GAAP")." (Compl.¶ 25). They further charge that "as demonstrated by the defendants' overstatements and misstatements of Cendant's operations and earnings" the defendants either had actual knowledge or were deliberately reckless.

Defendants CUC directors, HFC directors and E & Y all claim that the plaintiffs have not plead the alleged fraud with the particularity required by Rule 9(b) and the PSLRA.

### a. CUC Directors

■ The CUC directors note that the plaintiffs ask the Court to infer scienter based on the defendants' positions as directors or officers of Cendant or CUC. This general base has been rejected by numerous courts. *See, e.g., In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1422 (3d Cir.1997); *Coates v. Heartland Wireless Communications, Inc.*, 26 F.Supp.2d 910, 916 (N.D.Tex. 1998); *In re Advanta Corp. Securities Litig.*, 1998 WL 387595 * 7 (E.D.Pa. July 9, 1998). The Court recognizes that some courts have found that allegations of scienter were sufficient based on individual defendants' status as "senior officer, di-

rectors and/or controlling shareholders," *See e.g., Ballan v. Wilfred American Educational Corp.*, 720 F.Supp. 241, 253 (E.D.N.Y.1989), but the allegation passed muster only when "taken together with . . . more specific allegations linking their positions to their knowledge." *Id.* Here, the plaintiffs make no such linkage. The argument relied on by them is so general and broad as to allow them to allege scienter and wrongdoing against any director or high-ranking officer of a corporation whenever the corporation's stock suffered a significant drop in value. *Accord In re Health Management, Inc. Securities Litig.*, 970 F.Supp. 192, 205 (if the court inferred scienter from mere fact of director's position, then "executives of virtually every corporation in the United States would be subject to fraud allegations.").

■ The plaintiffs also allege scienter to the CUC directors because they signed the Cendant Form 10–K and had access to facts in their roles as directors or officers of Cendant or CUC. (Compl.¶¶ 12–13). These arguments have also been rejected by the courts. *See In re WRT Energy Securities Litig.*, 1999 WL 178749 at * 14 (S.D.N.Y. Mar.31, 1999) (allegations that officer/director signed the annual report and was involved and familiar with issuer's day-to day operations "do not suffice to plead . . . conscious misbehavior."); *Health Management*, 970 F.Supp. at 204–05 (pleading that director signed 10–K insufficient to create strong inference of scienter).

### b. The HFS Directors

■ The HFS director defendants also assert that, as to them, the plaintiffs fail to allege fraud with particularity. They repeat the arguments of the CUC defendants about scienter based on their positions within HFS or Cendant, and add that the plaintiffs have not alleged any facts suggesting that the HFS directors were either aware of any misstatements of fact or recklessly disregarded them. Here, they assert, the plaintiff has merely

lumped together all defendants without specifically stating what role the HFS defendants had in the alleged fraud and how that role was carried out. The Court agrees.

c. *E & Y*

[redacted] E & Y, not surprisingly, also contends that the plaintiffs have not plead their fraud claims against them with sufficient particularity. Relying on *McLean v. Alexander,* 599 F.2d 1190 (3d Cir.1979), E & Y argues that if they, as auditors, had an honest belief that the statements made by them were true, they are not liable. *Id.* at 1198 (citation omitted). They further state that this applies whether or not the belief was reasonable. *Id.* In *McLean,* an investor decided to purchase a company based partly on false and misleading information contained in a report prepared by the company's accountants. *Id.* at 1193. The buyer brought suit against the accountants, claiming that the accountants had acted in a reckless manner in the preparation of its audit, causing the plaintiff to incur a loss. *Id.* at 1196. The court found that it is not enough to merely allege that the accountants failed to discover misstatements in the financial statements that it was auditing. *Id.* at 1198. To properly plead scienter, the plaintiff must usually allege "circumstantial evidence" showing "shoddy accounting practices amounting at best to a 'pretended audit' or of grounds supporting a representation 'so flimsy as to lead to the conclusion that there was no genuine belief back of it.'" *Id.* (citation omitted).

The thrust of the plaintiffs' complaint against E & Y is that "E & Y's opinions inaccurately represented that its audit of CUC's ... financial statements were conducted in accordance with generally accepted auditing standards ("GAAS") and that CUC's financial statements fairly presented CUC's financial condition and results of operations in conformity with GAAP." (Compl.¶ 27). While this statement seems to allege scienter on the part of E & Y, it is actually a conclusory allegation made after the fact. The plaintiffs do not allege that E & Y acted with scienter, or knew that its audit and the representations made in connection with the audits were false or misleading. They start with the undenied proposition that CUC's financial statements did not accurately present the company's financial condition and results of operations, then seek to conclude that the audits and representations by E & Y were not conducted according to GAAS and GAAP. The proposition and the bald conclusion—singly or together—do not give rise to a "strong inference" that E & Y acted with scienter, nor does it plead fraud with the particularity required by Rule 9(b) and the PSLRA. To state a valid securities fraud claim, allegations of violations of GAAP must be accompanied by factual allegations of corresponding fraudulent intent. *See Chill v. General Elec. Co.,* 101 F.3d 263, 270 (2d Cir.1996); *Rehm v. Eagle Fin. Corp.,* 954 F.Supp. 1246 (N.D.Ill.1997). The plaintiffs' argument neither alleges specific facts illustrating that E & Y had both motive and opportunity to commit fraud, nor strong circumstantial evidence of conscious misbehavior or recklessness. *See In re Burlington Coat Factory Securities Litig.,* 114 F.3d 1410, 1422 (3d Cir.1997); *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir.1995); *DiLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir.1990).

[redacted] The plaintiffs also allege that "E & Y personnel were frequently present at CUC's corporate headquarters throughout the year, and had continual access to and knowledge of CUC's confidential corporate financial, operating and business information." (Compl.¶ 30). This statement could be made in relation to the auditor of every corporation. If it were sufficient to plead scienter, it might make every auditor liable in cases of securities fraud.

[redacted] The plaintiffs refer to *In re Leslie Fay Securities Litig.,* 835 F.Supp. 167 (S.D.N.Y.1993), that the sheer magnitude of the fraud may lead to an inference of

scienter. The *Leslie Fay* court found that the plaintiff merely had to "allege a factual foundation which creates an inference of scienter." *Id.* at 171. This case of a different circuit does not avail the plaintiffs, however, because it was decided two years before the enactment of the PSLRA requirement of a "strong inference" of scienter. *See Advanta, supra,* 1998 WL 387595 at * 3 (The PSLRA requires that the plaintiff must "state with particularity facts giving rise to a strong inference that the plaintiff acted with the required state of mind.").

The plaintiffs' pleadings of fraud follow a pattern where they assert that there was obvious fraud, and then make conclusory allegations naming certain defendants as the most appropriate persons to be accused of guilt. This manner is not sufficient under the law. The purpose of the heightened pleading standards for fraud found in Rule 9(b) and the PSLRA is to give any defendant notice of the charges against him so that he can mount a sufficient defense. *Accord Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 658 (3d Cir.1998) ("[t]he purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged ..."); *Ross v. Bolton, et al.,* 904 F.2d 819, 823 (2d Cir.1990).

The plaintiffs here lump the defendants together and make general conclusory allegations of wrongdoing. By this, the plaintiffs do not afford the defendants the necessary opportunity to know exactly of what each is accused. The HFS Directors cannot differentiate their alleged wrongdoing from that of the CUC Directors. Within each group, the alleged culpability of inside directors is not separated from that of outside directors. The E & Y defendants cannot be sure exactly what accounting principles or standards they are accused of violating nor how these alleged violations

assisted the alleged fraud. Most importantly, the plaintiffs do not sufficiently link the defendants, directly and specifically, with incidents or circumstances which, apart from their positions or roles within the various companies, connect them to wrongdoing and create a "strong inference" of scienter. The defendants' motions to dismiss the plaintiffs' § 10(b) and Rule 10b–5 claims are granted without prejudice for failure to allege fraud with particularity.

**4. *Sections 15 of the Securities Act and 20(a) of the Exchange Act***[7]

■ Counts IV and V of the plaintiffs' complaint allege that the "individual defendants are 'control' persons of HFS and Cendant and are liable to the plaintiffs for the Section 11 and Section 12(2), Section 10(b) and Rule 10b–5 violations alleged." Section 15 of the Securities Act, 15 U.S.C. § 77o, provides "[e]very person who ... controls any person liable under [Section 11] or [Section 12] of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable...." Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) instructs that "[e]very person who ... controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled to any person to whom such controlled person is liable...." The Court has dismissed all of the necessary underlying claims of sections 11, 12(2) of the Securities Act, section 10(b) of the Exchange Act, and Rule 10b–5. It follows then that the Court dismisses the dependent claims brought under Section 15 of the Securities Act and Section 20(a) of the Exchange Act without prejudice.

---

**7.** Because of the similarity between these two sections, the Court need not analyze them separately. *See Copland v. Grumet,* 1998 WL 256654 at * 7 (D.N.J. Jan.9, 1998); *Laven v.*

*Flanagan,* 695 F.Supp. 800, 806 (D.N.J.1988); *Index Fund v. Hagopian,* 609 F.Supp. 499, 510 (S.D.N.Y.1985).

### 5. *Leave to Amend the Complaint*

 The plaintiffs have requested leave to amend their complaint if any part of the complaint is dismissed under Rule 9(b). While a plaintiff no longer has a right to amend its complaint as a matter of course after the complaint has been dismissed, the Court may still permit an amendment at its discretion. *See Kauffman v. Moss*, 420 F.2d 1270, 1276 (3d Cir.), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970). Plaintiffs have not, however, detailed the substance of any amendment or presented to the Court a proposed amended complaint. *See* N.J. Local R. 4:9–1 ("A motion for leave to amend shall have annexed thereto a copy of the proposed amended pleading"). Rather than inform the Court of its proposed amendments to the complaint, the plaintiffs request "the opportunity to amend their complaint to include whatever factual detail regarding the conduct of E & Y and the individual Defendants is ultimately required to be alleged in the Class Action Complaint." The Court will not consider the plaintiffs request to amend without having seen and reviewed the proposed amendment. Without such review, the Court cannot determine whether the amendment would be futile or resuscitable. Plaintiffs' motion for leave to amend is denied.

### Conclusion

The Court grants the defendants' motions to dismiss the plaintiffs' § 11 claim with prejudice. The Court grants the defendants' motions to dismiss the plaintiffs § 12(2) claim with prejudice. The Court grants the defendants' motion to dismiss the § 10(b) and Rule 10b–5 claims without prejudice, for failure to allege fraud with particularity. The Court grants the defendants' motion to dismiss the claims brought under § 15 of the Securities Act and § 20(a) of the Exchange Act without prejudice. The Court denies the plaintiffs' request to amend the complaint.

### ORDER

The plaintiffs, Kennilworth Partners, L.P., Soundshore Partners, L.P. and Soundshore Holdings LTD. (collectively "the plaintiffs"), brought suit in this Court against various defendants based on alleged violations of numerous securities laws. The Complaint alleges violations by defendants Cendant Corporation, HFS, Inc, certain HFS Directors, certain CUC, Inc. Directors and Ernst & Young, LLP of Section 11 (15 U.S.C. § 77k) of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (the "Securities Act") (Count I), violations by Cendant and HFS of Section 12 (15 U.S.C. § 77*l*) of the Securities Act (Count II), violations by all defendants of Section 10(b) (15 U.S.C. § 78j(b)) and Rule 10b–5 (17 C.F.R. § 240.10b–5) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* (the "Exchange Act") (Count III), violations by the HFS and CUC Directors (collectively "the individual defendants") of Section 15 (15 U.S.C. § 77*o*) of the Securities Act (Count IV), violations by the individual defendants of Section 20(a) (15 U.S.C. § 78t(a)) of the Exchange Act, and breach of contract against HFS and Cendant (Count VI). Each of the defendants filed a motion to dismiss the plaintiffs' complaint.

The Court grants the defendants' motions to dismiss the plaintiffs' § 11 claim with prejudice. The Court grants the defendants' motions to dismiss the plaintiffs' § 12(2) claim with prejudice. The Court grants the defendants' motion to dismiss the § 10(b) and Rule 10b–5 claims without prejudice, for failure to allege fraud with particularity. The Court grants the defendants' motion to dismiss the claims brought under § 15 of the Securities Act and § 20(a) of the Exchange Act without prejudice. The Court denies the plaintiffs' request to amend the complaint.

**SO ORDERED.**