**Yakov PRAGER, Individually and on behalf of all others similarly situated, Plaintiff,**

v.

**KNIGHT TRADING GROUP, INC. Knight Securities, L.P., and Kenneth D. Pasternak, Defendants.**

**No. CIV. 00–2677(DRD).**

United States District Court, D. New Jersey.

July 17, 2001.

Gary S. Graifman, Esq., Kantrowitz, Goldhammer & Graifman, Montvale, Jules Brody, Esq., Mark Levine, Esq., Aaron Brody, Esq., Stull, Stull & Brody, New York City, for Plaintiff.

Robert J. Del Tufo, Esq., William P. Frank, Esq., Andrew Muscato, Esq., Skadden, Arps, Slate, Meagher & Flom, Newark, NY, for Defendants.

## OPINION

DEBEVOISE, Senior District Judge.

On March 17, 2000, plaintiff filed this action against Knight/Trimark Group, Inc. and John Does 1–10 in the Superior Court of New Jersey, Hudson County. On June 2, 2000, defendants filed a notice of removal of this action to federal court pursuant to 15 U.S.C. § 78bb(f)(2) of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") because the case "involves a 'covered security'" under the Act.

On July 5, 2000, plaintiff filed a motion to remand the case to state court, arguing that the case was not removable under SLUSA because it did not involve a covered security. Defendant opposed, and simultaneously moved to dismiss the complaint, alleging that the case was properly removed to federal court under SLUSA's removal provision and that the complaint should be dismissed because plaintiff's claims were preempted by SLUSA. The court concluded that removal of the case to federal district court was proper and that if plaintiff failed to file an amended complaint that conformed with the Private Securities Litigation Reform Act of 1995 ("PSLRA") within a specified period of time the matter would be dismissed.

On November 16, 2000, plaintiff filed an amended complaint that named as defendants Knight Trading Group, Inc., Knight Securities, L.P., and Kenneth D. Pasternak (collectively "defendants"). Presently pending is defendants' motion to dismiss the amended complaint pursuant to Fed. R.Civ.P. 12(b)(6), 9(b) and the PSLRA.

### FACTS

Knight Securities ("Knight") is a "market maker" engaged in the business of executing the purchase and sale of NASDAQ securities for various broker/dealers.

(Am.Compl.¶¶ 7–8.) Plaintiff Yakov Prager engaged in the purchase or sale of NASDAQ-listed securities through TD Waterhouse, a broker/dealer that sends about half of its orders to Knight for execution. (Am.Compl.¶ 6.) Plaintiff purports to represent a class of all retail purchasers and sellers of NASDAQ-listed securities whose orders were executed through Knight for the period July 8, 1998, through March 3, 2000. (Am.Compl.¶ 10.) Plaintiff alleges that Knight engaged in a pattern and practice of market manipulation in which it profited from the prices at which it executed trades for the retail customers of broker/dealers by "gaining an informational advantage and trading in advance of such customers and thereafter selling or buying securities for a profit." (Am.Compl.¶ 1.) Plaintiff asserts violations of Section 10(b) of the Securities Act and Rule 10b–5 and Section 20(a) of the Exchange Act.

Plaintiff alleges that the Rules of Conduct of the National Association of Securities Dealers ("NASD") require brokers to execute retail customers' trades at the best available market price, without excessive markups, that broker/dealers' management committees establish procedures to enforce those requirements, and that market makers fill limit order requests before executing their own trades. (Am.Compl.¶¶ 17–18.) Further, plaintiff alleges that Knight represented in multiple filings with the Securities and Exchange Commission ("SEC") that it "provides guaranteed, automated, electronic, continuous execution at the National Best Bid or Offer [NBBO][1] or better" for thousands of NASDAQ securities, that it "guarantees to execute, at the opening NBBO, all market-eligible orders it has received before 9:25 a.m.," and that it "is committed to providing a superior execution methodology that emphasizes automated execution and rule compliance, [and] real-time information to customers." (Am.Compl.¶¶ 20–22, 25–26.)

Plaintiff alleges that at the time those statements were made, Knight was "engaged in a pattern and practice of manipulating the market by profiting from the prices at which it trades with its retail customers, by trading in advance of such retail customers and thereafter buying or selling securities for an unfair profit." (Am.Compl.¶ 30.) Specifically, plaintiff alleges that Knight's "exclusive knowledge of large numbers of orders gives it an informational advantage on which it can trade for its own profit. [Knight] takes information about retail customers' intentions to trade and uses that information to improve its own proprietary trading profit at the expense of its customers . . . ." (Am. Compl.¶¶ 31–32.)

As described by counsel for plaintiff at the hearing on the instant motion, "the allegations essentially come down to manipulation in the pre-opening market to drive the price at the opening to a level that it ordinarily would not have been at." (Tr. at 4:5–8.) Plaintiff's counsel described that alleged manipulation as follows:

> There is a practice in the business that's called crossing. When one crosses, one would [buy] the stock at a higher price [than] the lowest sell, . . . [s]o that if the lowest sale price were ten dollars, and Knight wanted to drive it up because it had a position that was higher than ten dollars, it would bid, for argument's sake, ten and a half . . . and, therefore, that would have an effect on

---

1. All NASDAQ market makers are required to input their bid and offer prices to the NASD computer, which collects the information and then posts and continually updates the NBBO for each offered security. *See Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 135 F.3d 266, 268 (3d Cir.1998).

the price. It would drive the price up.... [If] the order is put in and the market hasn't opened, and [plaintiff's] order is sitting with [Knight] and [Knight] knows that he's looking to buy at a certain price and if, in fact, there's manipulation going on, which is alleged in the complaint, that will push the price up.

(Tr. at 5:14–24, 7:15–20.)

Plaintiff asserts that Knight's practice violates NASDAQ rules of conduct, implied and express agreements between plaintiff (and potential class members) and the broker/dealers for whom Knight acts, Knight's fiduciary obligations, and Rule 10b–5. (Am.Compl.¶ 36.) Additionally, plaintiff alleges that defendants knew (1) that the public statements issued by Knight were materially false and misleading and (2) that they were acting to manipulate the prices at which they were conducting transactions. (Am. Compl. ¶ 37; Tr. at 9:17–19.)

## DISCUSSION

For purposes of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a plaintiff's factual allegations are to be accepted as true. *See In re MobileMedia Sec. Litig.*, 28 F.Supp.2d 901, 921 (D.N.J.1998). A plaintiff "must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist." *Kennilworth Partners L.P. v. Cendant Corp.*, 59 F.Supp.2d 417, 422 (D.N.J.1999). When considering a 12(b)(6) motion, a district court may not consider any material beyond the pleadings, but may properly refer to factual allegations contained in other documents (such as documents referred to in the complaint and matters of public record) if the plaintiff's claims are based on those documents. *See In re Burlington*

*Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997).

### Section 10(b) and Rule 10b–5.

The first claim of the amended complaint alleges violations of Section 10(b) and Rule 10b–5. (Am.Compl.¶¶ 39–46.) Through Section 10(b), Congress prohibited "manipulative or deceptive" acts in connection with the purchase or sale of securities. 15 U.S.C. § 78j. Rule 10b–5, adopted by the SEC, lists three types of prohibited manipulative or deceptive devices or contrivances: (a) To employ any device, scheme, or artifice to defraud; (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. 17 C.F.R. § 240.10b–5 (1993).

Plaintiff's amended complaint and submissions in opposition to the present motion appear to allege that defendants violated Rule 10b–5 by making material misstatements or omissions—but plaintiff's amended complaint does not specifically allege whether Knight either misstated, or omitted, or did both. However, at oral argument on the present motion counsel for plaintiff stated:

The other aspect of the claim is there was a material *omission* to the extent that Knight makes filings with the SEC, or they make statements that they will provide execution services for brokers, and if, in fact, they're manipulating the stock at the opening, then that would be obviously a material fact with respect to that representation, which is *omitted.*

(Tr. at 15:25–16:6 (emphasis added).)

■ Therefore, plaintiff must demonstrate: (1) an omission of a material fact in

connection with the purchase or sale of a security; (2) scienter on the part of the defendant; (3) reliance on the omission; and (4) damage resulting from the omission. *See Newton,* 135 F.3d at 269.

**Rule 9(b)**

 Because a Rule 10b–5 claim is a "fraud" claim, plaintiff must comply with Fed.R.Civ.P. 9(b), which states as follows: "In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." In order to satisfy Rule 9(b) in connection with Rule 10b–5, a plaintiff must plead with particularity (1) a specific misrepresentation of material fact, (2) the knowledge by defendants of its falsity, (3) the ignorance by the plaintiff of its falsity, (4) the intention of defendants that it should be acted upon and (5) that plaintiff acted upon it to his detriment. *See In re Westinghouse Sec. Litig.,* 90 F.3d 696, 710 (3d Cir.1996). The particularity requirement is "relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control" because that requirement may "permit sophisticated defrauders to successfully conceal the details of their fraud." *In re Burlington,* 114 F.3d at 1418. However, boilerplate and conclusory allegations will not suffice. *Id.*

**Private Securities Litigation Reform Act ("PSLRA")**

 In addition to complying with Rule 9(b), a plaintiff alleging securities fraud must comply with the PSLRA. 15 U.S.C. § 78u–4 et seq. Congress enacted the PSLRA in an effort to curb abuse in private securities litigation, especially the filing of "strike suits." S.Rep. No. 104–98, at 4 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 683. The PSLRA seeks to "curtail the filing of abusive lawsuits" through the establishment of a "uniform and stringent pleading requirement." *Id.* at 15, reprinted 1995 U.S.C.C.A.N. at 694. To that end, the PSLRA requires that a complaint alleging a Section 10(b) violation set forth "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Additionally, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," *i.e.,* knowingly and with intent to defraud, with respect to each act or omission alleged to violate Section 10(b). 15 U.S.C. § 78u–4(b)(2); *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 530 (3d Cir.1999). It is sufficient, however, for a plaintiff to plead scienter by alleging facts "establishing a motive and an opportunity to commit fraud, or by setting forth facts that constitute [strong] circumstantial evidence of either reckless or conscious behavior." *Id.* at 534. If those requirements are not met, the complaint shall be dismissed. 15 U.S.C. § 78u–4(b)(3).

Further, the PSLRA mandates that "if an allegation regarding [a] statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u4(b)(1). In so drafting the PSLRA, "Congress intended to assure that the requirements of Rule 9(b) were met in all securities fraud cases, including those pled on information and belief." *In re Silicon Graphics, Inc. Sec. Litig.,* 970 F.Supp. 746, 752 (N.D.Cal.1997).

In support of the motion to dismiss, defendants assert that plaintiff has failed to allege a violation of Section 10(b) and Rule 10b–5 because plaintiff has not alleged misrepresentation or omission (Def.

Br. at 28–32), or the other elements necessary to establish the elements of such a claim. (Def. Br. at 36–38.)

### 1. *Misrepresentation or Omission* (Rule 10b–5(b))

■ To establish a claim under Section 10(b) and Rule 10b–5(b), a plaintiff must plead, with particularity, "(1) that the defendant made a misrepresentation or omission of (2) a material (3) fact; (4) that the defendant acted with knowledge or recklessness and (5) that the plaintiff reasonably relied on the misrepresentation or omission and consequently suffered damage." *In re Advanta*, 180 F.3d at 537. Additionally, pursuant to the PSLRA, the complaint must set forth "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Additionally, the complaint must "state with particularity facts giving rise to a strong inference" that defendants acted with scienter. 15 U.S.C. § 78u–4(b)(2).

Defendants assert that plaintiff's references to the SEC filings are insufficient to allege misrepresentation because the statements were true when made and therefore could not have been misrepresentations; moreover, plaintiff does not indicate how the statements were false. (Def. Br. at 28–29.) Additionally, defendants assert that plaintiff has not alleged an omission violative of 10(b) or 10b–5(b) because an omission must cause statements already made to be misleading, 15 U.S.C. § 78u–4(b)(2), but plaintiff has not alleged what statements were rendered misleading or how they were rendered misleading. (Def. Br. at 29–30.)

As stated *infra*, although plaintiff's amended complaint and submissions do not make clear whether Knight is alleged to have made misstatements or omissions, at oral argument plaintiff stated that Knight's failure to disclose that it was allegedly manipulating stock prices was an omission of a material fact. (Tr. at 15:25–16:6.) In light of that representation, although plaintiff's written submissions interestingly do not address defendants' point regarding omissions, plaintiff counters that the amended complaint does allege misrepresentations, citing filings with the SEC stating that Knight would execute trades at the NBBO or better. (Pl. Br. at 35 (citing Am. Compl. ¶¶ 21, 22, 25).)

Even accepting plaintiff's statements as true, nowhere does the Amended Complaint allege why the SEC filings were misleading. For example, there is no allegation that Knight was not executing trades at the NBBO or better. It is only in plaintiff's opposition brief where he asserts that defendants' statements were false and misleading because "in actuality, the defendants were not executing trades for its customers at the best prices. The defendants would execute its [sic] own trades at the best prices. The defendants were engaged in a practice of acquiring profit for its own account while forcing its customers to incur a greater cost." (Pl. Br. at 35.) Plaintiff offered a different theory at oral argument, agreeing that he was not alleging that Knight was not trading at the NBBO, but rather that the NBBO was artificially affected by Knight's activities before the opening of the market. (Tr. 20:23–21:4.) Therefore, it is difficult to understand how plaintiff is alleging that the statements were misleading.

Additionally, and seemingly contrary to his written submission, at oral argument plaintiff made clear that he is alleging omissions, rather than misleading state-

ments, in conjunction with alleged market manipulation as the basis of the 10b–5 claim. However, the amended complaint fails to make clear how Knight's failure to disclose that it was using its "informational advantage" to trade in advance of retail customers caused statements already made to be misleading. Plaintiff explained at oral argument that he is asserting that as a result of Knight's alleged market manipulation, plaintiff was paying a higher price than he should have. (Tr. at 21:1–4.) That does not mean, for example, that Knight was not executing at the NBBO or better. Plaintiff fails to plead (or explain elsewhere) how Knight's failure to disclose its alleged manipulation of the market caused statements already made to be misleading. Because the amended complaint does not allege a misstatement or omission of material fact, plaintiff has failed to state a claim under Section 10(b), Rule 10b–5(b) and the pleading requirements of the PSLRA. It is not necessary, therefore, to examine the remaining elements of a claim under Section 10(b) and Rule 10b–5: scienter on the part of the defendant, reliance on the omission, and damage resulting from the omission.

It is noted that in the previous opinion in this case it was stated that plaintiff pleaded "what are, in essence, securities fraud claims . . . ." 124 F.Supp.2d 229, 235 (D.N.J.2000). However, that was in the context of concluding that plaintiff originally filed his complaint in state court and made claims under state law—conduct precluded by SLUSA. 15 U.S.C. § 78bb(f)(1). Additionally, although that opinion stated that the facts gave rise "to a strong inference that Knight acted with intent to defraud," 124 F.Supp.2d at 235, that was to distinguish a case, relied upon by plaintiff, that analyzed whether a complaint satisfied Fed.R.Civ.P. 9(b) and the heightened pleading requirements of the PSLRA.

Whether the heightened pleading requirements of the PSLRA had been satisfied in this case was not the issue presented on that motion; the question was not even whether plaintiff stated every element of a cause of action for securities fraud; rather, the question was whether SLUSA applied to plaintiff's apparent attempt to circumvent the heightened pleading requirements of the PSLRA by bringing what were essentially federal securities claims as state law claims in state court. It was concluded that plaintiff had attempted to do just that and was thereafter given the opportunity to file a complaint that conformed with the PSLRA. Therefore, it is at this time, when considering defendants' motion to dismiss plaintiff's amended complaint pursuant to Fed. R.Civ.P. 12(b)(6), 9(b) and the PSLRA, that consideration of whether plaintiff has satisfied the pleading requirements is appropriate.

2. *Market Manipulation*

■ Subsection a of Rule 10b–5 makes unlawful the employment of "any device, scheme, or artifice to defraud." Defendants allege that plaintiff has failed to plead a viable claim of market manipulation.

In the Amended Complaint plaintiff alleges that Knight engaged in a pattern and practice of manipulating the market by profiting from the prices at which it executed trades for the retail customers of broker/dealers by "gaining an informational advantage and trading in advance of such customers and thereafter selling or buying securities for a profit." (Am. Compl.¶¶ 1, 44.) Specifically, plaintiff alleges that Knight's "exclusive knowledge of large numbers of orders gives it an informational advantage on which it can trade for its own profit. [Knight] takes information about retail customers' inten-

tions to trade and uses that information to improve its own proprietary trading profit at the expense of its customers . . . ." (Am. Compl.¶¶ 31–32.)

At the hearing on this motion, counsel for plaintiff stated that "the allegations essentially come down to manipulation in the pre-opening market to drive the price at the opening to a level that it ordinarily would not have been at," (tr. at 4:5–8) stating that defendants engaged in "crossing" before the market opened by, for example, trading in advance of customers and driving up the price of a stock by bidding higher than the lowest sale price. (Tr. at 5:14–24, 7:15–20.) Essentially, plaintiff argues that trading in advance, which is prohibited during market hours, similarly should be prohibited in the premarket hours. (Tr. at 12.)

From 9:30 a.m. though 6:30 p.m., a market maker holding a limit order may not trade for its own account at a price that would satisfy the limit order without first executing the limit order. *Manning Limit Order Protection Interpretation* ("Manning") (NASD IM–2110–2); Self–Regulatory Organizations: Notice of Filing and Order Granting Accelerated Approval of a Proposed Rule Change by the National Association of Securities Dealers, Inc. Relating to Customer Limit Order Protection in a Decimal Trading Environment, Exchange Act Release No. __, 2001 WL 345206 (April 6, 2001); Roger D. Blanc, *Trading: Selected Best Execution Considerations in the New Market Environment,* SF51 ALI–ABA 105 (2001). Manning does not apply to market makers attempting to satisfy inventory requirements prior to the opening of the market.

NASD has observed that increasingly customers are entering orders with brokers prior to the market opening and as a result there has been an increase in premarket trading to manage order imbalances. *Nasdaq Requests Comment on Extending Manning Limit Order Protection Interpretation to Premarket Hours,* NASD Notice to Members 00–70. In response to that observation, the NASD Board of Governors has proposed extending Manning to the pre-market only for those customers that affirmatively agree to have their limit orders protected by Manning. *Id.* It is clear, therefore, that Manning does not apply to the conduct alleged here.

Market makers must commit their own capital in order to build inventories and to stand ready to honor broker and dealer buy and sell orders. They must of necessity participate in pre-market transactions to create these inventories. Inevitably market makers will have on hand limit orders before the pre-market trading begins.

Plaintiff speculates that because of the knowledge derived from limit orders placed in advance Knight can and does trade for its own profit. The complaint does not allege how this can be done when Knight has no way of knowing the details of the limit orders placed with a multitude of other market makers in the same stock; nor does the complaint allege that in fact this profit making practice actually occurred with respect to any particular stock or limit order.

Moreover, the word "manipulative" is a term of art connoting "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 199, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). In order to survive a 12(b)(6) motion, a claim of market manipulation must allege direct participation in a manipulative scheme with manipulative intent, *see In re Blech Sec. Litig.,* 961 F.Supp. 569, 580 (S.D.N.Y.1997), and the defendant

must have exerted dominion and control over the market for an extended period of time. *See United States v. Mulheren,* 938 F.2d 364, 371 (2d Cir.1991) (in criminal context, stating that evidence of manipulation is strong where domination is sustained over a significant period of time); *see also Trane Co. v. O'Connor Sec.,* 561 F.Supp. 301, 305 (S.D.N.Y.1983) (finding no market manipulation in violation of § 9(a) of Securities Act where defendants' purpose was not to create artificial demand for stock or induce public investment to its detriment). The amended complaint in this case does not allege that Knight asserted control over a particular stock over an extended period of time.[2] Thus the complaint fails to allege any specific manipulative transaction or a manipulative scheme in general.

### *Conclusion*

For the reasons set forth above, defendants' motion to dismiss is granted. An appropriate order shall be entered.

**2.** Plaintiff's claim against defendant Pasternak pursuant to Section 20(a) of the Exchange Act will be dismissed because plaintiff has failed to state a claim against Knight pursuant to Section 10(b) and Rule 10b–5. *See In re Advanta,* 180 F.3d at 541.