**In re CENDANT CORPORATION SECURITIES LITIGATION.**

**This document relates to**

**Eileen McLaughlin, Plaintiff,**

**v.**

**Cendant Corporation, et al., Defendants.**

**Civ. No. 98–1664 (WHW).**

United States District Court, D. New Jersey.

Dec. 7, 1999.

Andrew Jacobs, Michael Coslit, Fitzsimmons, Ringle & Jacobs, Newark, NJ, Brian L. Wamsey, Londa & Traub, New York City, for Plaintiff.

Herbert J. Stern, Stephen M. Greenberg, Joel M. Silverstein, Stern & Greenberg, Roseland, NJ, James G. Kreissman, Jacob S. Pultman, Sasha A. Smith, Simpson Thacher & Bartlett, New York City, for Henry Silverman, Leonard S. Coleman, Brian Mulroney, Leonard Schutzman and Robert F. Smith.

Steven S. Radin, Sills Cummis Zuckerman Radin Tichman Epstein & Gross, Newark, NJ, Greg A. Danilow, Timothy E. Hoeffner, Timothy A. Greensfelder, Weil, Gotshal & Manges LLP, New York City, Dennis J. Block, Howard Hawkins, Cadwalader, Wickersham & Taft, New York City, for Walter A. Forbes, Anthony G. Petrello and Robert T. Tucker.

## OPINION

WALLS, District Judge.

This matter is before the Court on the motions of individual defendants Walter A. Forbes, Anthony G. Petrello, Robert T. Tucker, Henry R. Silverman, Leonard S. Coleman, Brian Mulroney, Leonard Schutzman, and Robert F. Smith to dismiss plaintiff Eileen McLaughlin's complaint. Plaintiff has filed a cross-motion for leave to amend the complaint in the event any portion of her complaint is determined defective. The Court grants defendants' motions. Plaintiff's cross-motion for leave to amend is denied.

### Factual Background [1]

Cendant Corporation ("Cendant") was formed by the merger of CUC International, Inc. ("CUC") and HFS Incorporated ("HFS") on December 17, 1997. In the merger, holders of HFS common stock were issued shares of CUC common stock pursuant to a Registration Statement dated August 28, 1997 and a Joint Prospectus. Because CUC was the surviving corporation, CUC shareholders did not exchange their stock as part of the merger. CUC was renamed "Cendant" after the merger.

Plaintiff is a former CUC and Cendant employee, who worked from November 8, 1989 until March 20, 1998. Between February 1, 1990 and February 21, 1997, plaintiff received 66,863 CUC employee stock options under her employee stock option plan.[2] She also asserts that she purchased 7,777 options on April 21, 1997. She resigned from Cendant on March 20, 1998. Under the terms of the employee stock option plan, she had to exercise her options within four months of her departure from the company.

On April 15, 1998, Cendant announced that it had discovered accounting irregularities in certain former CUC business units. The next day, Cendant's stock fell 47%, from $35 ⅝ to $19 1/16 per share. On April 17th, Cendant restricted exercise of all employee stock options. This restriction continued until October 16, 1998. During this period, Cendant set January 4, 1999 as the date by which plaintiff had to exercise her options. On December 15, 1998, plaintiff exercised options and purchased 10,000 shares and on December 23,

---

1. *In re Cendant Corp. Litigation,* 182 F.R.D. 144 (D.N.J.1998), and *In re Cendant Corp. Litigation,* 60 F.Supp.2d 354 (D.N.J.1999), provide a full factual and procedural history of this litigation.

2. Plaintiff received 7,595 options on 2/1/1990; 18,986 on 2/1/1991; 12,657 on 2/1/1992; 10,125 on 8/28/1992; 5,625 on 7/22/1993; 5,625 on 11/23/1994; 3,750 on 12/13/1995; 2,500 on 2/21/1997; and 7,777 on 4/21/1997. Am Compl. Ex. A.

1998, plaintiff exercised options for an additional 44,387 shares. She still owns 7,777 options.

On December 14, 1998, and July 14, 1999, plaintiff filed her complaint and amended complaint respectively. She asserts securities fraud claims and "control person" claims with common law fraud and misrepresentation against defendants Walter Forbes and Henry Silverman. Plaintiff, in her brief in opposition to the motions to dismiss, does not oppose Silverman's motion "based on defendant Silverman's showing that he was not involved in the activities of CUC until after the plaintiff's last purchase of options." Pl. Brf. at 2 n. 1. Her complaint also contains a claim for breach of fiduciary duty in the administration of the option plan against Anthony Petrello, Robert Tucker, Leonard Coleman, Brian Mulroney, Leonard Schutzman and Robert Smith.

Defendant Walter A. Forbes, the former Chairman of Cendant, moves to dismiss plaintiff's claim of securities fraud. First, he asserts that plaintiff's acquisitions of stock options do not qualify as a "purchase or sale" of securities. Consequently, she has no standing under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. Second, Forbes maintains that the complaint fails to plead the requisite level of scienter. He also moves to dismiss plaintiff's "control person" claim because she cannot demonstrate a primary violation of Section 10(b) and fails to allege that he was a "culpable participant" in the alleged fraud perpetrated by Cendant.

Defendants Petrello and Tucker, two former non-management directors and members of Cendant's compensation committee, who move to dismiss plaintiff's claim for breach of fiduciary duty, argue that: (1) directors and officers do not owe fiduciary duties to holders of stock options; (2) plaintiff cannot hold these defendants liable for the decisions of the Compensation Committee which occurred after their resignations; and (3) the breach of fiduciary duty claim is barred by Cendant's arti-

cles. of incorporation. The former HFS directors, Leonard S. Coleman, Brian Mulroney, Leonard Schutzman, and Robert F. Smith, also move to dismiss plaintiff's claim because it "is a pure duty of care claim ... barred by Cendant's Certificate of Incorporation." Brf. at 15.

## Analysis

### A. Motion to Dismiss

On a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), the Court is required to accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir.1994). The question is whether the claimant can prove any set of facts consistent with his/her allegations that will entitle him/her to relief, not whether that person will ultimately prevail. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). While a court will accept well-plead allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. See Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. *See Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir.1998); *see also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 at 299 (2d ed.1990).

## B. Section 10(b) and Rule 10b-5

■ As the Court has written, *see In re Cendant Corp. Litig.,* 60 F.Supp.2d 354 (D.N.J.1999); *Kennilworth Partners L.P. v. Cendant Corp.,* 59 F.Supp.2d 417 (D.N.J.1999); *P. Schoenfeld Asset Management LLC v. Cendant Corp.,* 47 F.Supp.2d 546, 552 (D.N.J.1999), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), prohibits the use of fraudulent schemes or devices in connection with the purchase or sale of securities. Under Section 10(b), it is unlawful to "employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention" of any rule promulgated by the SEC designed to protect the investing public. 15 U.S.C. § 78j(b). To implement the statute, the SEC enacted Rule 10b-5, violation of which gives rise to a private cause of action. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *see also In re Cendant Corp. Litig.,* 60 F.Supp.2d at 367-68. That Rule makes it unlawful: (1) "[t]o employ any device, scheme, or artifice to defraud," (2) "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading," or (3) "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. The Supreme Court has held that standing to bring a private cause of action under Rule 10b-5 is limited to actual purchasers or sellers of securities. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).

■ The plaintiff must prove knowledge by the defendant, an intent to defraud, misrepresentation or failure to disclose, materiality of the information, and injurious reliance by the plaintiff. *Thomas v. Duralite Co.,* 524 F.2d 577 (3d Cir.1975); *Rochez Bros., Inc. v. Rhoades,* 491 F.2d 402 (3d Cir.1973). More precisely, these elements create the following test: To form a 10b-5 claim, a plaintiff must allege that the defendant made (1) a misstatement or an omission (2) of a material fact (3) with scienter (knowledge) (4) in connection with the purchase or sale of a security (5) upon which plaintiff reasonably relied, and (6) that reliance proximately caused injury to the plaintiff. *Kline v. First Western Government Sec., Inc.,* 24 F.3d 480, 487 (3d Cir.), *cert. denied sub nom., Arvey, Hodes, Costello & Burman v. Kline,* 513 U.S. 1032, 115 S.Ct. 613, 130 L.Ed.2d 522 (1994); *In re Phillips Petroleum Sec. Litig.,* 881 F.2d 1236, 1244 (3d Cir.1989) (citing *Angelastro v. Prudential-Bache Sec., Inc.,* 764 F.2d 939, 942-43 (3d Cir.), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985)); *see also In re Cendant Corp. Litig.,* 60 F.Supp.2d at 368-69.

At the outset, defendant Walter Forbes argues that plaintiff has no standing under Rule 10b-5 or Section 10(b) of the Exchange Act because the grant of plaintiff's options pursuant to an employee stock option plan does not qualify as a "purchase or sale."

### 1. Standing

As said, only a seller or purchaser of a security may bring an action under either Section 10(b) of the Securities Exchange Act of 1934 or Rule 10b-5. *Blue Chip Stamps,* 421 U.S. at 723, 95 S.Ct. 1917. Defendant Forbes maintains that plaintiff's acquisitions of options between 1990 and 1997 were not purchases or sales as defined by the federal securities laws because (1) the plan was non-contributory—plaintiff made no direct contributions to the plan—and (2) participation in the plan was compulsory in the sense that plaintiff's only decision was to accept or reject the benefits. Forbes Brf. at 5-6. Plaintiff counters that she has standing under Sec-

tion 10(b) for the 7,777 options she purchased in April 1997 because they were acquired "in lieu of accepting cash compensation." Am. Compl. ¶ 55; Pl. Brf. at 16. With regard to her other options, she argues that because they were provided as "an incentive to key employees of the Company and ... to offer an additional inducement in obtaining the services of such individuals," she "purchased" these options by providing requested additional services to the company and remaining as an employee. Pl. Brf. at 17.

### a. Options Granted Under the Plan

When an individual "commits herself to employment by a corporation in return for stock or the promise of stock," she will be considered an investor worthy of protection under the federal securities laws. *See Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 560 (2d Cir.1985). Where a plaintiff accepted employment with the issuer in return for an annual salary of $40,000 plus options to purchase up to 30,000 shares of the issuer's stock, the court held that plaintiff "purchased" the options. *Yoder*, 751 F.2d at 560. Similarly, in *Rudinger v. Insurance Data Processing, Inc.*, the plaintiff bargained for and received an employment contract wherein he was to receive a certain number of stock options in addition to an annual salary of $100,000. 778 F.Supp. 1334, 1338–39 (E.D.Pa.1991). The court declared "[a]n agreement exchanging a plaintiff's services for a defendant corporation's stock constitutes a 'sale' under the terms of the Securities Exchange Act." *Id.; see also, e.g., Campbell v. National Media Corp.*, No. 94–4590, 1994 WL 612807 (E.D.Pa. Nov. 3, 1994) (finding that grant of options to purchase 50,000 shares in executive's employment agreement was a purchase of securities); *Collins v. Rukin*, 342 F.Supp. 1282, 1289 (D.Mass.1972) (finding that stock options were a "quid pro quo offered to induce plaintiff to enter into the employ of [the issuer]"). These cases indicate that where a potential employee acquires the right to options as part of his or her bargained-for compensation, courts will infer that the employees made an intentional decision to "purchase" the options. Here, however, plaintiff acquired her options when she was already employed by Cendant under a plan that offered the options not to her as an individual, but as a member of an employee group.

■ Because of the nature of the offering, Defendant Forbes analogizes plaintiff's situation to those from which courts have concluded that there was no "purchase or sale." Under the SEC's "no sale" doctrine, a grant of securities to an employee pursuant to a stock bonus plan is not a "purchase or sale" because these employees "do not individually bargain to contribute cash or other tangible or definable consideration to such plan ... [and] employees in almost all instances would decide to participate if given the opportunity." Securities Release No. 33–6188, 1980 WL 29482 (Feb. 1, 1980). Such plans are "involuntary [or compulsory], non-contributory plans." *Id.* at *8. This position was restated in a SEC No–Action Letter which found that no registration of stock options was required "when an employee does not give anything of value for stock other than the continuation of employment *nor independently bargains for such stock*, such as a stock bonus program that involves the award of stock to employees at no direct cost." *See Compass Group PLC*, SEC No–Action Letter, 1999 WL 311797 (May 13, 1999) (emphasis added). Similarly, courts apply the SEC's "no sale" doctrine when an employee's plan is found to be compulsory and noncontributory. *See International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Daniel*, 439 U.S. 551, 558–59, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) ("An employee who participates in a noncontributory compulsory pension plan by definition makes no payment into the pension fund."). This reasoning has been extended to employee stock option plans. *Bauman v. Bish*, 571 F.Supp. 1054 (N.D.W.Va. 1983), concluded that an employee stock

option plan was "compulsory" where "there [was] no affirmative investment decision" by the individual employee. *See also Childers v. Northwest Airlines, Inc.,* 688 F.Supp. 1357, 1363 (D.Minn.1988) ("Plaintiffs' participation was an incident of employment and their only choice would have been to forego the receipt of benefits entirely."). The *Bauman* court rejected the argument that the employee "contributed" to the plan by exchanging stock for labor. *See Bauman,* 571 F.Supp. at 1064 ("The notion that the exchange of labor will suffice to constitute the type of investment which the Securities Acts were intended to regulate was rejected in *Daniel.*"); *see also Childers,* 688 F.Supp. at 1364 ("[P]laintiffs' participation in the [option plan] was not an individual affirmative decision to give up a particular consideration in return for a financial interest."). The court concluded that no "purchase or sale" had taken place.

Here, plaintiff's description of the plan leads the Court to conclude that it is both compulsory and noncontributory. Plaintiff did not receive her options as a part of a bargained-for exchange that required her to make an affirmative investment decision. *Cf. Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 560 (2d Cir.1985); *Rudinger v. Insurance Data Processing, Inc.,* 778 F.Supp. 1334, 1338–39 (E.D.Pa.1991). Though the plan stated that it was created to provide an incentive for employees to remain with Cendant, that language does not change the actual structure of the plan. As in *Childers,* plaintiff's participation in the option plan "was an incident of employment and [her] only choice would have been to forego the receipt of benefits entirely." 688 F.Supp. at 1363. Because of the absence of any purchase or sale of the 66,863 options acquired by the plaintiff between 1990 and 1997, she does not have standing under Section 10(b).[3]

**3.** Even were the Court to conclude that plaintiff had standing, the Court has serious doubts as to whether plaintiff could demonstrate how the "purchase" of approximately 60,000 op-

#### b. The Additional 7,777 Options

Plaintiff's complaint also asserts that she purchased 7,777 Cendant stock options "in lieu of accepting cash compensation." Am. Compl. ¶ 55 ("Cendant also offered McLaughlin the chance to purchase employee stock options in lieu of accepting cash compensation."). Defendant Forbes responds that plaintiff fails to plead any facts to support her contention that she "purchased" these options; "plaintiff's Complaint does not identify (i) the amount of the bonus she supposedly agreed to forego to obtain the options, (ii) the Plan pursuant to which she received the [o]ptions, (iii) the misstatement or omission she supposedly relied upon in making this 'purchase', or (iv) any loss that resulted from that transaction." Forbes Rep. Brf. at 3 n. 1.

Stock options are defined as a "security" under the Exchange Act. 15 U.S.C. § 78(c)(a)(10) and are regulated by the federal securities laws. Plaintiff's unsupported assertion that these options were "purchased" "in lieu of accepting cash compensation," however, is insufficient to grant standing under Section 10(b). *See Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977) (a court will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation).

Plaintiff requests leave to amend her complaint if any portion of it is dismissed. She has submitted a Second Amended Complaint which contains an augmented description of her acquisition of the 7,777 options. *See* Second Am. Compl. ¶ 64A. While a plaintiff may not amend the complaint as a matter of course after a portion of it has been dismissed, the Court may still permit an amendment at its discretion. *See Kennilworth,* 59 F.Supp.2d at 431;

tions acquired between 1990 and 1994 was made "in connection with" fraud that allegedly commenced in fiscal year 1995.

*Kauffman v. Moss,* 420 F.2d 1270, 1276 (3d Cir.1970). Fed.R.Civ.P. 15(a) directs that "leave shall be freely given when justice so requires." A court considering a request to amend should weigh several factors which include undue delay, bad faith, and the possible futility of amendment. *See Harel v. Rutgers,* 5 F.Supp.2d 246, 260 (D.N.J.1998); *see also DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987). A motion to make an "[a]mendment is to be liberally granted where from the underlying facts or circumstances, the plaintiff *may be able to state a claim." McCartin v. Norton,* 674 F.2d 1317, 1321 (9th Cir.1982) (emphasis added); *see also Abbott v. Latshaw,* 164 F.3d 141, 149 (3d Cir.1998).

Plaintiff has satisfied Local Rule 4:9–1 which requires that motions for leave to amend contain a copy of the proposed amended pleading. Here, proposed ¶ 64A reads, in part:

> Pursuant to this [option] Plan, plaintiff purchased the option to buy 7,777 shares of CUC stock at the price of $20.50 (see Exhibits A and B). Plaintiff paid about $35,000 for these options, or about $4.50 per share.

This proposed addition is sufficient to augur that plaintiff's Section 10(b) claim for these 7,777 options may be resuscitable; plaintiff states that she made a decision to purchase certain options at a set price. *See generally Kennilworth Partners LP v. Cendant Corp.,* 59 F.Supp.2d 417 (D.N.J. 1999).

Such potential standing to assert a Section 10(b) claim is of little consequence, however, if the proposed second amended complaint fails to satisfy the heightened pleading requirements for fraud under Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4(b)(2).

## C. Pleading Requirements

### 1. Amended Complaint

Because the Court has dismissed plaintiff's Section 10(b) claim for lack of standing, it need not address defendant's arguments that plaintiff's present complaint fails to satisfy the pleading standards of Rule 9(b) and the PSLRA.

### 2. Request to Amend

As mentioned, plaintiff requests leave to amend her complaint if any portion of it is dismissed. Her Second Amended Complaint contains amplified allegations of wrongful conduct by Forbes. *See* Second Am. Compl. at ¶¶ 32A–32Q, 41A–41B, 64A–64H. Defendant Forbes renews his argument that the allegations of fraud in the proposed complaint do not satisfy Rule 9(b) and the PSLRA. He contends that proposed complaint asks the Court to infer that he acted with scienter merely because of his executive position.

#### a. Scienter

Fed.R.Civ.P. 9(b) necessitates that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." "The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged" in order to give them an opportunity to respond meaningfully to a complaint, "and to prevent false or unsubstantiated charges." *Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 658 (3d Cir.1998). The rule "requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 534 (3d Cir.1999) (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990)). Plaintiffs "need not, however, plead the 'date, place or time' of the fraud, so long as they use an 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Rolo,* 155 F.3d at 658 (citing *Seville Indus. Mach. v. Southmost Mach.,* 742 F.2d 786, 791 (3d Cir.1984)). The Third Circuit has cautioned that

courts should "apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *Rolo,* 155 F.3d at 658 (citing *Christidis v. First Pennsylvania Mortg. Trust,* 717 F.2d 96, 99 (3d Cir.1983)). A plaintiff who alleges securities fraud must "allege facts that give rise to a strong inference of scienter." *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 53 (2d Cir.1995); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1418 (3d Cir. 1997). A plaintiff may establish this strong inference " 'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.' " *Burlington,* 114 F.3d at 1418 (quoting *Acito,* 47 F.3d at 52).

The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(b)(2), specifically addresses the scienter requirement of a Section 10(b) claim. It requires that a complaint which asserts a Section 10(b) claim must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). This scienter requirement mirrors that of the Second Circuit developed in *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987). *See Advanta,* 180 F.3d at 534; H.R. Conf. Rep. No. 104–369, 104th Cong., 1st Sess. 41, 41 (1995), reprinted in 1995 U.S.C.C.A.N. 740, 740; S. Rep. 98, 104th Cong., 1st Sess. 15 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 694. To satisfy this pleading requirement, plaintiffs must state with particularity facts which show that defendants had both motive and opportunity to commit fraud or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See id.; see also Burlington,* 114 F.3d at 1418; *Acito,* 47 F.3d at 52. Recklessness, in turn, involves "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Advanta,* 180 F.3d at 535 (quoting *McLean v. Alexander,* 599 F.2d 1190, 1197 (3d Cir.1979)). Conscious behavior in this sense refers to "intentional fraud or other deliberate illegal behavior." *Id.; cf. In re Silicon Graphics, Inc. Sec. Litig.,* 183 F.3d 970, 979 (9th Cir.1999) (stating that plaintiffs "can no longer aver intent in general terms … but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent").

■ Forbes correctly notes that the Court cannot infer scienter based on the defendant's positions as a director or officer of Cendant or CUC. This general basis for liability has been rejected by numerous courts, including this one. *See Kennilworth Partners L.P. v. Cendant Corp.,* 59 F.Supp.2d 417, 428–28 (D.N.J.1999); *see also, e.g., Burlington,* 114 F.3d at 1422; *Coates v. Heartland Wireless Comms., Inc.,* 26 F.Supp.2d 910, 916 (N.D.Tex. 1998); *In re Advanta Corp. Sec. Litig.,* 1998 WL 387595, at \*7 (E.D.Pa. July 9, 1998); *In re Health Management, Inc. Sec. Litig.,* 970 F.Supp. 192, 205 (E.D.N.Y. 1997) (if the court inferred scienter from mere fact of director's position, then "executives of virtually every corporation in the United States would be subject to fraud allegations"). Allegations that a director or officer signed public disclosures and/or was involved in the company's daily operations, standing alone, will not satisfy the pleading requirements of the PSLRA or Rule 9(b). *See Kennilworth,* 59 F.Supp.2d at 428 (refusing to find required level of scienter where plaintiff alleged that the CUC directors signed the Cendant 10–K and "had access to facts in their roles as directors or officers of Cendant"); *see also In re WRT Energy Sec. Litig.,* 1999 WL 178749, at \*14.

#### b. Proposed Amendment

■ Plaintiff's proposed complaint adds a paragraph which alleges that Forbes

knew of irregular CUC accounting practices that took place as early as 1991 and failed to adequately respond to them. Second Am. Compl. ¶ 32A. She further charges that Forbes had reviewed CUC's quarterly statements and was involved in the drafting of false and misleading statements found in CUC and/or Cendant's disclosures. *See generally* ¶¶ 64B, 19–21. Plaintiff also supplements her allegation that Forbes had a motive to commit fraud. ¶ 32Q.

After reviewing plaintiff's proposed complaint, the Court finds that plaintiff's revised allegations of fraud do not adequately plead scienter under the PSLRA or Rule 9(b).[4] While the complaint adds that Forbes knew of earlier CUC accounting adjustments, the bulk of the complaint continues to rely on Forbes's position as a director and officer to satisfy the pleading requirements. For plaintiff to plead generally Forbes's involvement and knowledge of these irregularities without any detailing of "how," "what," and "when"—"the first paragraph of any newspaper story"—does not meet the demands of Rule 9 and the PSLRA. *See In re Advanta Corp. Sec. Litig.*, 180 F.3d at 534 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990)). Additionally, plaintiff's amended allegation that Forbes had a motive to commit fraud—to sustain Cendant's stock price to complete various mergers—does not preserve this cause of action. Pleadings of generalized motives to support stock price "which could be imputed to any publicly-owned, for-profit endeavor, [are] not sufficiently concrete for purposes of inferring scienter." *Chill v. General Elect. Co.*, 101 F.3d 263, 267 (2d Cir.1996); *see also Thacker v. Medaphis Corp.*, No. 97–

2849, 1998 WL 684595, at *3 (S.D.N.Y. Sept. 30, 1998) (motive to continue "aggressive acquisition of related companies" did not satisfy PSLRA); *In re Crown Am. Realty Trust Sec. Litig.*, Co. 95–202J, 1997 WL 599299, at *12 (W.D.Pa. Sept. 15, 1997) (motive to maintain access to capital markets insufficient to support scienter). Plaintiff's motion for leave to amend her Section 10(b) claim is denied.

### D. Section 20(a)

 Section 20(a) of the Exchange Act creates liability for "controlling persons" in a corporation, 15 U.S.C. § 78t(a), and imposes joint and several liability upon anyone who "controls a person liable under any provision of" the Securities Exchange Act of 1934. To maintain a claim under Section 20(a), the plaintiff must establish (1) an underlying violation by a controlled person or entity, (2) that the defendants are controlling persons, and (3) that they were "in some meaningful sense culpable participants in the fraud." *Rochez Brothers v. Rhoades*, 527 F.2d 880, 885 (3d Cir.1975) (quoting *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir.1973)).

### 1. First Amended Complaint

 Plaintiff's present complaint pleads underlying violations of Section 10(b) of the Exchange Act by Cendant, the controlled entity. Am. Compl. ¶¶ 27–32, 82–92. She has alleged that defendant acted as a "controlling person" of Cendant within the meaning of Section 20 of the Exchange Act. ¶¶ 10, 19, 93–96. Defendant Forbes, however, argues that plaintiff has failed to adequately plead that he was a "culpable participant" in any fraud perpetrated by CUC/Cendant.[5] Plaintiff

---

4. This ruling also applies to plaintiff's common law fraud claim. *See* Am. Compl. Count III.

5. The PLSRA applies a heightened pleading standard to "any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind." 15 U.S.C. § 79u–4(b)(2). The com-

plaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* Although the heightened pleading standard is most often applied to Section 10(b) actions, the language of the state addresses "*any* private action ... in which the plaintiff may recover money damages." *Id.; see also Mishkin v. Ageloff*, No. 97–2690, 1998 WL

responds that she has adequately plead that Forbes was a culpable participant in the Company's fraud by claiming that Forbes was "involved in drafting, producing, reviewing and/or disseminating the false and misleading statements ... [and was] aware (or recklessly disregarded) that the false and misleading statements were being issued." Am. Compl. ¶ 20.

The Court, however, need not address these arguments. Plaintiff's Section 10(b) claim, necessary as a base of Section 20(a) status, has been dismissed for lack of standing. Plaintiff's Section 20(a) claim must be and is dismissed. *See Gunter v. Ridgewood Energy Corp.*, 32 F.Supp.2d 166, 178–79 (D.N.J.1998); *see also generally Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 279 (3d Cir.1992); *Kennilworth Partners L.P. v. Cendant Corp.*, 59 F.Supp.2d 417, 430 (D.N.J.1999).

### 2. Leave to Amend Section 20(a) Claim

Because plaintiff's motion for leave to amend her Section 10(b) claim has been denied, the Court also dismisses her motion for leave to amend the Section 20(a) claim. As stated, a Section 20(a) claim is not sustainable absent a viable Section 10(b) claim.

### E. Breach of Fiduciary Duty

Defendants Petrello and Tucker ("CUC Directors") and Coleman, Mulroney, Schutzman, and Smith ("HFS Directors") move to dismiss Count V of the complaint which alleges that they breached their fiduciary duty to plaintiff. Plaintiff's proposed amended complaint makes no changes to this count. She asserts that her stock option exercise price could have been adjusted by Cendant's Compensation Committee, and that the failure to do so subjects the CUC and HFS Directors to liability as members of the committee. The directors argue that: (1) as a matter of law, no fiduciary duty was owed to plaintiff; (2) they did not owe any fiduciary duty to plaintiff on the facts as alleged by plaintiff; and (3) plaintiff's claim is barred by Article Eleventh of Cendant's Restated Certificate of Incorporation. The CUC Directors add that certain events giving rise to the claim occurred after they resigned from the Compensation Committee and Cendant's Board of Directors.

Plaintiff counters that she brings the action against the directors as employee benefit plan administrators. Thus, she argues that Article Eleventh is inapplicable, as is case law advanced by defendants that corporate directors owe no fiduciary duty to non-stockholders for corporate acts. She, instead, urges the Court to apply to her claim the fiduciary duty standard developed under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

### 1. Existence of Fiduciary Duty

Traditionally, for fiduciary duty to exist, one must hold the property of another for the benefit of another. *See Simons v. Cogan*, 549 A.2d 300 (Del.1988) ("Before a fiduciary duty arises, an existing property right or equitable interest supporting such a duty must exist."). Under Delaware law,[6] "a mere expectancy interest does not create a fiduciary relationship .... [because] [b]efore a fiduciary duty arises, an existing property right or equitable interest supporting such a duty must

651065, at *24 (S.D.N.Y. September 23, 1998) ("[S]ection 78u–4(b)(2) ... is applicable to more than just section 10(b) claims."). As stated, under Section 20(a), the required "state of mind" for liability is "culpable participation." Accordingly, to adequately plead "culpable participation" by a controlling person, a plaintiff must plead "particularized facts of the controlling person's conscious misbehavior as a culpable participant in the fraud." *Mishkin*, 1998 WL 651065, at *24.

6. The option plan states: "The Plan and all rights hereunder shall be construed in accordance with an[d] governed by the internal laws of the State of Delaware." Am. Compl. Ex. C at 7.

exist." *Simons,* 549 A.2d at 303–04 (addressing whether fiduciary duties are owed to owners of convertible debentures). Holders of unexercised stock options merely have a contractual right to purchase an equitable interest in a corporation at some later date. *See Starkman v. Warner Comm., Inc.,* 671 F.Supp. 297, 304 (S.D.N.Y.1987) ("The [option] instrument stands alone, claiming no equity in the corporation, entitled to no vote, and with no fiduciary obligation of the management to the option holder's interest."), *cited in Powers v. British Vita, P.L.C.,* 969 F.Supp. 4, 5 (S.D.N.Y.1997). Stock options, therefore, "do not qualify for the protections that flow from a fiduciary duty." *See Glinert v. Wickes Co.,* No. 10407, 1990 WL 34703, at *9 (Del.Ch. Mar. 27, 1990), *aff'd,* 586 A.2d 1201, 1990 WL 254353 (Del.1990) ("Our prior cases have held that an option to buy stock in futuro does not make one an equitable stockholder."); *see also British Vita,* 969 F.Supp. at 6 (holding that employees granted options are not owed a fiduciary duty). So too in New Jersey, where *Hecht v. Papermaster,* No. L–12691–96, slip op. at 108 (N.J.Super.Ct. May 12, 1998), stated "plaintiffs do not and did not hold an equity interest" and concluded "plaintiffs simply do not have grounds to assert a breach of fiduciary duty claim."

■ Recognizing this limitation, plaintiff attempts to create a fiduciary duty to optionholders through application of federal ERISA law. ERISA defines a "fiduciary" as any person "who exercises any discretionary control respecting management of such plan ... or has any discretionary authority in the responsibility of the in the administration of the plan." 29 U.S.C. § 1002(21)(A); *see also* 29 U.S.C. § 1104. Here, although the plan arguably grants some discretion to the Compensation Committee, plaintiff expressly concedes that "the plan at issue does not fall within the statutory definition of a qualified ERISA plan." Pl. Brf. at 39; *see also Mantos v. Combustion Engineering, Inc.,* No.

385445, 1993 WL 117792, at * 4 (Conn.Super. Apr. 1, 1993) ("[A] stock bonus plan 'does not fit within ERISA's definitional framework.'"). One court, considering a similar argument that ERISA fiduciary duty standards should extend to non-ERISA plans, remarked: "The plaintiffs did not cite, and research did not reveal, any cases that stand for the proposition that a company administering a stock option plan owes a fiduciary duty to the option holder." *See Bill v. Emhart Corp.,* No. 940538151, 1996 WL 636451, at * 4 (Conn.Super. Oct. 24, 1996) (citing *Simons v. Cogan,* 549 A.2d 300 (Del.1988), for the proposition that "a mere expectancy interest does not create a fiduciary relationship").

The Court finds that, as a matter of law, the two sets of directors did not owe a fiduciary duty to plaintiff under her employee stock option plan. The HFS and CUC Directors' remaining arguments to dismiss this count need not be addressed. Plaintiff's claim for breach of fiduciary duty (Count V) is dismissed. The Court finds that an amended complaint will not revive this cause of action. Accordingly, plaintiff's motion for leave to amend this count is denied.

### *Conclusion*

Defendant Silverman's motion to dismiss is granted. Defendant Forbes's motion to dismiss Count I of the First Amended Complaint is granted because plaintiff has failed to demonstrate that she has standing to sue under Section 10(b) and Rule 10b–5. Plaintiff's cross-motion for leave to amend this count is denied. Similarly, Forbes's motion to dismiss Counts II (Section 20(a)) and III (Common Law Fraud) of the complaint is granted and plaintiff's motion for leave to amend these counts is denied. Count V of the complaint against defendants Coleman, Mulroney, Schutzman, Smith, Petrello and Tucker is dismissed and plaintiff's motion for leave to amend this count is denied.

## ORDER

This matter is before the Court on the motions of individual defendants Walter A. Forbes, Anthony G. Petrello, Robert T. Tucker, Henry R. Silverman, Leonard S. Coleman, Brian Mulroney, Leonard Schutzman, and Robert F. Smith to dismiss the complaint against them by plaintiff Eileen McLaughlin. Plaintiff has filed a cross-motion for leave to amend the complaint in the event any portion of her complaint is determined defective. Having heard oral argument on November 23, 1999, considered the parties' submissions, and for good cause shown,

It is on this day of December,

ORDERED that defendant Silverman's motion to dismiss the complaint against him is granted with prejudice; and, it is

ORDERED that defendant Forbes's motion to dismiss Counts I, II, and III of the First Amended Complaint is granted with prejudice and plaintiff's cross-motion for leave to amend these counts is denied; it is further

ORDERED that Count V of the complaint against defendants Coleman, Mulroney, Schutzman, Smith, Petrello and Tucker is dismissed with prejudice and plaintiff's motion for leave to amend this count is denied.