NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-644

CHRIS ESSLER

vs.

CURALEAF HOLDINGS, INC. & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Chris Essler, appeals from a summary judgment entered in Superior Court in favor of the defendant, Curaleaf Holdings, Inc. (Curaleaf), on his claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, negligence, and negligent misrepresentation.[2]  We affirm.

Background.  Essler worked as the vice president of sales for Select, a cannabis company owned by Cura Partners, Inc.

---

[1] Unknown agents of Curaleaf identified in the complaint as "Doe's 1-3."

[2] Essler also sought equitable relief in the form of an accounting and an injunction, but he does not appeal from the dismissal of those claims.

(Cura).  In October 2019, Cura entered into a merger agreement with Curaleaf, which provided that Curaleaf would acquire Select's operations.  Essler's employment ended at the time of the merger, around February 1, 2020.

On February 5, 2020, Essler and Curaleaf entered into an option rollover and award agreement (option rollover agreement) that converted Essler's stock options from Cura into 265,403 fully vested replacement Curaleaf stock options.  The option rollover agreement allowed Essler to exercise these options by completing and delivering a form titled "schedule A," along with full payment of the $9.98 per option exercise price, before July 30, 2022.  In October 2020, Curaleaf sent an e-mail message to its stock option holders, including Essler, inviting them to activate a "personal account on the Curaleaf Equity Gateway with Global Shares," an online brokerage platform.  One purpose of the Global Shares platform was to allow holders to exercise options in a "cashless" manner, whereby a holder could receive a net payout without having to pay the exercise price upfront.  In 2022, Essler brought suit against Curaleaf, alleging that it prevented him from exercising his stock options through the Global Shares platform at a financially advantageous time. Curaleaf moved for summary judgment on all of Essler's claims,

2

and the judge allowed the motion in a written memorandum of decision.

Discussion. "We review a decision to grant summary judgment de novo." Shea v. Cameron, 92 Mass. App. Ct. 731, 734 (2018). "The moving party is entitled to summary judgment if, viewing the evidence in the light most favorable to the nonmoving party, 'there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law.'" Huang v. Ma, 491 Mass. 235, 239 (2023), quoting HSBC Bank U.S.A., N.A. v. Morris, 490 Mass. 322, 329 (2022). See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).

1. Breach of contract and the implied covenant of good faith and fair dealing. Essler contends that Curaleaf breached its contractual duties as well as the implied covenant of good faith and fair dealing by preventing him from exercising his options on the Global Shares platform. Essler's option rollover agreement with Curaleaf did not mention the Global Shares platform, and in fact stated that no cashless exercise option was available at that time. Nevertheless, Essler claims that a unilateral contract was created when Curaleaf subsequently invited Essler to activate a personal account on the Global Shares platform. In the alternative, he claims that the

3

invitation to join the platform gave rise to a bilateral contract.

We agree with the judge that Essler failed to show a breach of contract. "With respect to an offer for a unilateral contract, the offeree must perform an act to form a binding contract, and the act operates as the manifestation of mutual assent and consideration." Boston Capital Funding, LLC v. BEK Winchester Winning Farm LLC, 103 Mass. App. Ct. 573, 577 (2023), citing 2 R.A. Lord, Williston on Contracts § 6.2 (4th ed. 2023). Nothing in the record established that Curaleaf manifested an intention to be bound to a legal obligation when it invited option holders to activate personal accounts on the Global Shares platform. Furthermore, as the judge concluded, there was no consideration to support the formation of a contract under either theory. See Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690 (2016) (plaintiff claiming breach of contract must show agreement between parties supported by consideration); Miller v. Cotter, 448 Mass. 671, 684 n.16 (2007) ("reciprocal exchange of benefit and detriment constitutes consideration"). Essler neither provided a benefit to Curaleaf nor incurred a detriment by registering for access to the Global Shares platform. See Congregation Kadimah Toras-Moshe v. DeLeo, 405 Mass. 365, 366 (1989). That both Curaleaf and option holders may have derived

4

some general benefit from option holders' use of the platform is insufficient to establish that Curaleaf and Essler entered into a "typical bargain" supported by consideration.  See Loranger Constr. Corp. v. E.F. Hauserman Co., 376 Mass. 757, 763 (1978).

For similar reasons, we reject Essler's contention that Curaleaf violated the implied covenant of good faith and fair dealing through "a lack of diligence, slacking off, and willful imperfect performance."  Because the option rollover agreement provided only that Essler could exercise his stock options through the schedule A form, and no contract existed between the parties regarding the use of the Global Shares platform, no breach of the implied covenant arose.  See Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385, cert. denied sub nom. Globe Newspaper Co. v. Ayash, 546 U.S. 927 (2005) (scope of implied covenant is "only as broad as the contract that governs the particular relationship").

2. Breach of fiduciary duty.  The judge properly entered summary judgment on Essler's claim for breach of fiduciary duty. To establish such a claim, a plaintiff "must show (1) the existence of a fiduciary duty; (2) breach of that duty; (3) damages; and (4) a causal connection between breach of the duty and the damages."  Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 91 Mass. App. Ct. 835, 842 (2017).

5

"Fiduciary duties may arise in two ways:  (a) as a matter of law, where parties to the subject relationship are cast in archetypal roles, such as trustee and [beneficiary], guardian and ward, attorney and client; or (b) as determined by the facts established upon evidence indicating that one person is in fact dependent on the another's judgment in business affairs or property matters" (quotations and citations omitted).

UBS Financial Servs., Inc. v. Aliberti, 483 Mass. 396, 406 (2019).  See Doe v. Harbor Sch., Inc., 446 Mass. 245, 253 (2006) (fiduciary duty exists where one puts "faith, confidence, and trust" in another's judgment and advice [citation omitted]).

Curaleaf did not owe Essler a fiduciary duty with respect to his execution of stock options on the Global Shares platform. There was no relationship of trust and confidence between Essler and Curaleaf, the company that acquired his former employer. Nor was Essler dependent on Curaleaf's judgment in business or property matters.  In particular, Curaleaf did not hold any property for Essler's benefit.  Rather, as a holder of unexercised stock options, Essler had only "a contractual right to purchase an equitable interest in a corporation at some later date."  McLaughlin v. Cendant Corp., 76 F. Supp. 2d 539, 550 (D.N.J. 1999).  See McGoldrick v. Trueposition, Inc., 623 F. Supp. 2d 619, 626 (E.D. Penn. 2009) ("Under Delaware law, courts have clearly stated that a fiduciary duty does not arise until there is an existing property right and that stock options of employees do not give rise to such an interest").  While Essler

6

cites the fiduciary duty standard developed under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq., that duty pertains to the exercise of discretionary authority or control in the management or administration of employer-sponsored retirement plans.  See Barchock v. CVS Health Corp., 886 F.3d 43, 44 (1st Cir. 2018).  No such duty was imposed as the result of Curaleaf's decision to invite Essler and other option holders to activate a personal account on the Global Shares platform.

3.  Negligence.  Essler claimed that Curaleaf acted negligently in how it transmitted information about him and his options into the Global Shares platform.  The judge concluded that this claim is barred by the economic loss doctrine.  We agree.

"[T]he economic loss doctrine bars recovery unless the plaintiffs can establish that the injuries they suffered due to the defendants' negligence involved physical harm or property damage, and not solely economic loss."  Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 469 (2009).  See Stop & Shop Cos. v. Fisher, 387 Mass. 889, 893-894 (1983) (negligence claim barred for "purely economic harm" arising from bridge closure where no physical damage to property).  Here, Essler alleged only economic loss resulting from Curaleaf's

7

alleged negligence.  Because there is no evidence of personal injury or property damage related to his negligence claim, summary judgment was properly entered on it.

4.  Negligent Misrepresentation.  Lastly, Essler argues that the judge erred in granting summary judgment on his claim for negligent misrepresentation.  "An exception to the [economic loss] doctrine permits recovery for economic losses resulting from negligent misrepresentation."  Nota Constr. v. Keyes Assocs., 45 Mass. App. Ct. 15, 20 (1998).

> "In order to recover for negligent misrepresentation[,] a plaintiff must prove that the defendant (1) in the course of his business, (2) supplie[d] false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information" (citation omitted).

O'Connor v. Merrimack Mut. Fire Ins. Co., 73 Mass. App. Ct. 205, 213 (2008).

Essler identified three statements by Curaleaf or its agents as bases for his negligent misrepresentation claim: (1) Curaleaf's October 2020 e-mail message inviting stock option holders to activate a personal account on the Global Shares platform; (2) an e-mail message from Curaleaf's investor relations associate Victoria Roseman on January 26, 2021, acknowledging an error on Essler's Global Shares account and

8

stating, "I followed up earlier asking for this to be complete tomorrow"; and (3) another e-mail message from Roseman dated February 11, 2021, stating that "[i]t came to my attention that Select optionees must sign the Form of Lock-Up per the option agreement prior to exercising shares."[3]  None of these statements is actionable.

First, Curaleaf's October 2020 invitation to join the Global Shares platform did not even mention a cashless exercise option, much less supply false information regarding how such transactions could be carried out.  Further, as the judge pointed out, the "record shows that Essler (and other employees) indeed had an option to exercise their options in a cashless transaction using Global Shares; the fact that Essler was unable to do so for several weeks while errors in his account were fixed does not render" any statement by Curaleaf false.

Second, Essler contends that Roseman's January 2021 e-mail message amounted to a representation "that the supposed fix would be 'complete tomorrow.'"  Roseman did not actually say that in her message, but rather simply reported that she had

_____

[3] We do not consider other alleged statements and omissions by Curaleaf employees that Essler mentions in conclusory fashion in his brief but did not identify as a basis for his claim in his opposition to Curaleaf's summary judgment's motion.  See Donovan v. Gardner, 50 Mass. App. Ct. 595, 602 (2000) (conclusory statements in brief do not rise to level of appellate argument).

asked for the error to be fixed by "tomorrow" and would "revert then."  In any event, even if the e-mail message were to be interpreted as a commitment that the error would be fixed the next day, we agree with the judge that it was a promise of future performance that did not give rise to a claim for negligent misrepresentation.  See Cumis Ins. Soc'y, Inc., 455 Mass. at 474 ("promises to perform an act cannot sustain a claim for negligence representation . . . unless the promisor had no intention to perform the promise at the time it was made").  There is no evidence that Roseman did not ask for the error to be fixed; to the contrary, the evidence shows that she opened up a "ticket" with Global Shares so that Essler would be able to exercise his options on the platform.

Lastly, Roseman's February 2021 e-mail message about the lock-up agreement cannot support a claim for negligent misrepresentation.  The judge concluded that this statement could be considered to have supplied "false information" because Global Shares did not know about the lock-up agreement requirement and Essler's failure to execute such an agreement was not the reason for his inability to exercise shares on the platform at that time.  We are less certain; the option rollover agreement did in fact require Essler to execute a lock-up agreement before exercising his options, and the record does not

10

show that Roseman expressly told Essler that his failure to execute that agreement prevented him from using the Global Shares platform. Even assuming the falsity of this statement, we agree with the judge that Essler cannot prove that any reliance on it caused him pecuniary loss. See Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 426 (2005) (limiting recovery to reliance damages, not "benefit of the bargain" damages, where misrepresentation resulted in plaintiff losing "only the opportunity to make a considerable profit on securities it did not own"). It is undisputed that, at all relevant times, Essler had the ability to exercise his options by completing the schedule A form, as provided in the option rollover agreement, but never attempted to do so. In addition, Essler did not attempt to exercise his stock options on the Global Shares platform after the errors with his account were resolved and he signed the lock-up agreement on March 10, 2021.[4] At his deposition, Essler testified that he did not recall trying to exercise his options on the Global Shares

---

[4] Essler incorrectly states that Curaleaf's stock plan administrator, Chadwick Nelson, testified at his deposition that Essler's options were "canceled on the Global Shares platform" as of February 2021 and "not corrected until February 2022." In fact, Nelson testified that Essler's options were canceled for only an eight or nine-day period when Essler was not trying to exercise his options, and that Nelson could tell from a screenshot that Essler sent him months earlier that Essler's Global Services account was working at that time.

platform at any time between March and October 2021.  Essler would have made a profit had he exercised his options during that period, either through the schedule A form or the Global Shares platform.  Given these facts, we agree with the judge that Essler did not suffer any pecuniary loss resulting from justifiable reliance on any false information supplied by Curaleaf.

<u>Judgment affirmed</u>.

By the Court (Henry, Smyth &
Toone, JJ.[5]),

Paul Little

Clerk

Entered:  April 18, 2025.

---

[5] The panelists are listed in order of seniority.